[No. 50733-3. En Banc. December 27, 1984.]

CERTIFICATION FROM THE
UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WASHINGTON
IN
UNITED STATES OF AMERICA, *Plaintiff,* v. 19.7 ACRES
OF LAND, ET AL, *Defendants.*

---

*John E. Lamp, United States Attorney, Robert M. Sweeney, Assistant,* and *Martin W. Matzen, Department of Justice Attorney,* for plaintiff.

*Jeffers, Danielson, Sonn & Aylward, P.S.,* by *Garfield R. Jeffers* and *Susan Cawley,* for defendants.

ANDERSEN, J.—

FACTS OF CASE

This matter is before the court on certification from the United States District Court for the Eastern District of Washington.[1]

---

[1] RCW 2.60.010–.030; RAP 16.16.

This is a condemnation action brought by the United States at the request of the Bureau of Reclamation for the purpose of acquiring fee title to 19.7 acres of land in Okanogan County. The condemnation is for a public use in connection with the third power plant project at Grand Coulee Dam. The property in question is approximately 1 mile downstream from the dam. At the time condemnation proceedings were commenced, it was used as a mobile home park known as "Earl's Trailer Park".

The declaration of taking filed by the government[2] described only the land which is owned by Earl's Inc., a domestic Washington corporation, and did not describe the tenants' mobile homes located within the mobile home park. It was not the government's intention to acquire the mobile homes, its theory being that the mobile homes were personal property and not a part of the real property. Subsequently, however, the trial court allowed certain of the tenants to intervene in the condemnation action.

In the ensuing litigation, the District Court certified the following question to this court.

## Question Certified

Whether, under the laws of the State of Washington, including the Mobile Home Landlord–Tenant Act, RCW 59.20, mobile homes owned by tenants of a mobile home park in the State of Washington and located upon rented lots within the park become part of the real property so that, upon condemnation of the lands within the park for public use, the condemnor also acquires the mobile homes located on the lands within the park?

## Answer

The question certified to us is a narrow one and our short answer to it is "no". Although it is neither this court's function nor purpose to decide the case before the federal court, it will be necessary in this case of first impression to go past answering and explaining the narrow question

---

[2]*See* 40 U.S.C. § 258(a) (1982).

posed so as to place our answer in proper perspective. Our purpose in so doing is to make it clear that this court regards mobile homeowners, who are tenants in mobile home parks, as having a number of important rights and protections in condemnation proceedings brought in this jurisdiction.

In the interest of readability, the citations in this opinion have been placed in the margin wherever feasible.

The mobile home may be characterized as a novel development of the mid 20th century which has become rapidly established as a different mode of living for large segments of the population. A number of social and economic problems have resulted and they, in turn, have been followed by numerous state and local regulations. Oftentimes conflicting and confusing court decisions, due in part to unfamiliarity with all factors involved and a lack of guiding precedent, also followed.[3]

As one leading text on the subject puts it, "[t]he newest and most realistic concept of a mobile home in its stage of development today is that it is properly subject to regulation, not solely as a vehicle or solely as a building, but as a combination of both—not only within the laws of the road but also within those applicable to realty and fixtures."[4]

The appellate courts of this state have treated mobile homes variously as real estate or personal property, depending on the relationship between the mobile home and the realty on which it may be located and on the statutes or regulations under consideration.

Where a mobile home was placed upon a permanent foundation on the mobile homeowner's own real estate and attached to the owner's own septic tank, as well as to water and electric services, this court concluded that the mobile home was a "building" permitted by the King County Zoning Code and not a "vehicle", as those words were used in

---

[3]*Mobile Homes and Mobile Home Parks* § 1.1 (L. Davis ed. 1975).

[4]*Mobile Homes and Mobile Home Parks* § 1.5 (L. Davis ed. 1975).

the code.[5] Similarly, the Court of Appeals considered mobile homes in a mobile home park located within the Skagit River floodway to be structures requiring a permit from the Department of Ecology, as the word "structure" was defined by statute and Department of Ecology regulations.[6]

On the other hand, in a case involving a mobile home on a rented lot in a mobile home park, where the certificate of title was in the name of only one spouse and that spouse sold the mobile home to a third party planning to remove it from the mobile home park, this court held that the mobile home was personal property and not real estate which would have required the other spouse to join in the conveyance.[7]

■ The criteria used by the Court of Appeals in a case involving applicability of the contractors' registration act, RCW 18.27, are also pertinent here in determining, for condemnation purposes, the relationship between these mobile homes and the real property upon which they are located. In that Court of Appeals case, a contractor who contracted to relocate a number of mobile homes was held not to be within the purview of that act because the mobile homes were personal property rather than real estate. As the court said in that case,

> we find that the mobile homes involved here had not lost their identity as mobile units and therefore remained personal property. Although the hitches and wheels were removed, the axles were left on the units. They were placed on blocks rather than permanent foundations, and the utility connections are not fixed pipes but flexible hoses which can easily be disconnected. The mobile homes in question are not fixtures. They are personal property.

---

[5]*State v. Work*, 75 Wn.2d 204, 449 P.2d 806 (1969).

[6]*Anderson v. Department of Ecology*, 34 Wn. App. 744, 664 P.2d 1278 (1983).

[7]*Cooper's Mobile Homes, Inc. v. Simmons*, 94 Wn.2d 321, 323–27, 617 P.2d 415 (1980); *cf.* Laws of 1981, ch. 304, § 1; RCW 26.16.030(5).

(Footnote and citation omitted.) *Clevenger v. Peterson Constr. Co.,* 14 Wn. App. 424, 426, 542 P.2d 470 (1975).

In the case before us, the mobile homes were owned by the tenants occupying them and were located on lots in a mobile home park which the tenants rented from the park owner. As in *Clevenger,* most of the mobile homes had wheels, axles and tongues still attached or stored under them and rested on concrete blocks. After a hearing, the District Court specifically found that "it is possible to move all of the mobile homes by professional mobile home movers." Also, as in *Clevenger,* many of the mobile homes' service hookups were by satellite detachable outlets provided by the park although an unspecified number of them had more permanent installations made by the tenants. We conclude here, as the Court of Appeals concluded in *Clevenger,* that the mobile homes in this case had not lost their identity as mobile units and remained personal property. Accordingly, the taking of the real estate by condemnation did not affect the ownership of the mobile homes thereon.[8]

Nor is there anything in this state's Mobile Home Landlord–Tenant Act, RCW 59.20, which suggests a contrary conclusion. Indeed, it is implicit in that act, which regulates and determines legal rights, remedies and obligations arising from rental agreements between the owners of mobile home parks and tenants,[9] that mobile homes on rented lots in such parks do not lose their identity as personal property belonging to tenants and do not become a part of the real estate by reason of being located thereon.

There is also nothing in the condemnation process by which such personal property is transmuted into real estate by the bringing of a condemnation action. And, contrary to the tenants' arguments before this court, there is nothing in the federal Uniform Relocation Assistance and Real Prop-

---

[8]4 J. Sackman, *Nichols on Eminent Domain* § 13.13 (3d rev. ed. 1981).

[9]RCW 59.20.040.

erty Acquisition Policies Act of 1970, 42 U.S.C. §§ 4601–4655 (1982) (federal relocation act), or in this state's relocation assistance, real property acquisition policy law, RCW 8.26 (state relocation act), which changes the character of mobile homes on rented mobile home park lots from personal property to real estate.[10] These two acts will be discussed further herein.

Nothing in the foregoing is to suggest, however, that mobile homeowners whose mobile homes are located in mobile home parks or are otherwise on someone else's property may not have an estate in the land on which they are located which would require condemnation and the payment of compensation therefor. They may have such an estate in situations where, for example, the mobile homeowner is a tenant for years under a written lease.[11]

Furthermore, outbuildings and other improvements owned by a mobile homeowner that are located on that person's lot rented from a mobile home park, and which are physically outside the mobile home unit itself, may require condemnation and the payment of compensation therefor. As between landlord and tenant in this state, such outbuildings and other improvements are usually considered to be fixtures removable by the tenant. This is by virtue of a provision in this state's Mobile Home Landlord–Tenant Act which so provides.[12] Any such right of the tenant to remove fixtures, however, is for the protection of the tenant and cannot be invoked by the condemnor; hence as against the condemnor, the tenant is entitled to compensation

---

[10]*See Scottsdale v. Eller Outdoor Advertising Co. of Ariz., Inc.*, 119 Ariz. 86, 92, 579 P.2d 590, 596 (Ct. App. 1978).

[11]2 J. Sackman, *Nichols on Eminent Domain* § 5.06 (3d rev. ed. 1983); 27 Am. Jur. 2d *Eminent Domain* § 250 (1966); Annot., *Eminent Domain: Measure and Elements of Lessee's Compensation for Condemnor's Taking or Damaging of Leasehold,* 17 A.L.R.4th 337, § 3 (1982); *State v. Spencer,* 16 Wn. App. 841, 559 P.2d 1360 (1977), *aff'd,* 90 Wn.2d 415, 583 P.2d 1201 (1978).

[12]RCW 59.20.100.

therefor.[13]

Finally, further reference needs to be made concerning the effect of the federal relocation act,[14] above referred to, on condemnations such as this one. The purpose of the relocation assistance portions of that act, namely 42 U.S.C. §§ 4621–4638 (1982), is to establish a uniform policy for the fair and equitable treatment of persons displaced as a result of federal and federally assisted programs in order that such persons will not suffer disproportionate injuries as a result of programs designed for the benefit of the public as a whole.[15] The federal relocation act provides a broad range of financial and other assistance in condemnation cases including: replacement housing for displaced homeowners; replacement housing for displaced tenants (such as the mobile homeowners in this case); various relocation assistance services; payment for improvements on the property taken, including improvements put in by tenants (duplication of payments is not permitted, however, where displaced persons elect to take under this program); and the exemption of payments received thereunder from federal income tax and from being considered as income for purposes of determining eligibility or the extent of eligibility for assistance under the social security act. Such payments and assistance are all handled by an administrative agency in the first instance rather than by the court.[16] In this case, either by way of addition to the benefits payable

---

[13]2 J. Sackman, *Nichols on Eminent Domain* § 5.47 (3d rev. ed. 1983); 27 Am. Jur. 2d *Eminent Domain* § 292 (1966); Annot., *Eminent Domain: Measure and Elements of Lessee's Compensation for Condemnor's Taking or Damaging of Leasehold,* 17 A.L.R.4th 337, § 10 (1982); *State v. Obie Outdoor Advertising, Inc.,* 9 Wn. App. 943, 516 P.2d 233, 73 A.L.R.3d 1114 (1973).

[14]Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §§ 4601–4655 (1982).

[15]42 U.S.C. § 4621 (1982).

[16]42 U.S.C. §§ 4601–4655 (1982). *See* Annot., *Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970,* 33 A.L.R. Fed. 9 (1977); 6A J. Sackman, *Nichols on Eminent Domain* §§ 34.1–34.3 (3d rev. ed. 1981).

under the federal relocation act, or as supplemental thereto, the government offered to pay the costs of moving the mobile homes to another location as well as any damages thereto caused by the move.

Because of the breadth of assistance provided under the federal relocation act, including cash payments to tenants, it would seem likely that in most instances displaced mobile home park tenants would elect to seek recovery under that act rather than resorting to judicial condemnation procedures in order to recover the value of any improvements they have placed on rented lots.

It is appropriate to observe parenthetically that this state's relocation act, also referred to above, substantially parallels the federal relocation act in cases involving public works programs instituted by state and local governments.[17]

Pursuant to RAP 16.16(g), the clerk of this court is directed to certify this opinion to the federal District Court by way of answer to the question of Washington law submitted.

UTTER, BRACHTENBACH, DOLLIVER, DORE, DIMMICK, and PEARSON, JJ., and CUNNINGHAM and WIELAND, JJ. Pro Tem., concur.

Reconsideration denied February 5, 1985.

---

[17]Relocation assistance, real property acquisition policy law, RCW 8.26. *See* RCW 8.26.010(1).