[No. 11986-6-III.    Division Three.    February 25, 1993.]

JUNE GILLETTE, *Respondent,* v. CLIFFORD ZAKARISON, ET AL, *Appellants.*

---

*Timothy Esser* and *Nuxoll, Libey, Ensley & Esser,* for appellants.

*Michael J. Pettit* and *Campbell, Pettit & Rubottom,* for respondent.

MUNSON, J. — Clifford Zakarison appeals the judgment against him arising out of violations of the Mobile Home Landlord-Tenant Act (the Act), RCW 59.20, for damages of $805 and attorney fees of $4,718.22, contending: (1) certain findings are not supported by substantial evidence; and (2) his demands of a purchaser of an existing mobile home for extensive repairs and landscaping as a condition to rental did not violate the Act. Ms. Gillette requests attorney fees and costs on appeal. We affirm.

In 1985 June Gillette installed her mobile home in a newly developed lot in Park West Mobile Home Community. The lot had no landscaping. Clifford and Ann Zakarison owned and operated Park West Mobile Home Community.[1] No written lease was ever offered to Ms. Gillette, she signed a receipt for the rules and regulations of Park West, "Guide to Happier Living".

As a condition to moving the mobile home onto the lot, Ms. Gillette replaced the skirting on the mobile home. The mobile home suffered minor damage during moving and installation. Ms. Gillette installed temporary steps while waiting for the lot to be graded and for topsoil. Mr. Zakarison was not pleased with the steps, removed them and was never satisfied with Ms. Gillette's landscaping efforts.

---

[1] Unchallenged finding of fact 9 states that Mr. Zakarison takes pride in his facility, which is aesthetically far superior to other mobile home parks in the area.

In May 1988 Ms. Gillette offered her mobile home for sale to Jean Beach. Mr. Zakarison discussed with Ms. Beach, in Ms. Gillette's presence, his repair and landscaping requirements as a condition of a lease of the lot to Ms. Beach. Ms. Gillette became upset and requested in writing a list of requirements for the "speedy sale of my home". Mr. Zakarison never replied to the letter. For undisclosed reasons the sale negotiations terminated.

In February 1990, Ms. Gillette listed her mobile home with Steven Swoope, a real estate broker. In June 1990 Kathleen Wilcox advised Mr. Zakarison of her offer to purchase the home. Mr. Zakarison told Ms. Wilcox his consent to any transfer was contingent on $500 of repairs to the home and $500 of landscape improvements. Ms. Wilcox's purchase offer was contingent on Ms. Gillette repairing the home and landscaping the lot to the satisfaction of Mr. Zakarison. The sale did not occur when the parties could not agree on who would bear the cost of the landlord's demands.

Ms. Gillette next signed a purchase and sale agreement with Rex and Sharon Watson. Before the meeting with the Watsons, Mr. Zakarison went to the mobile home and placed small pieces of black electrical tape on the mobile home to mark the dents, scratches, or blemishes, and photographed the home. Mr. Zakarison showed the Watsons the photographs and demanded repair and landscape deposits totaling $1,750 plus a security deposit of $250. The Watsons believed the required repair amount was excessive. The Watsons required a lease agreement for final approval of their loan and requested a written lease from Mr. Zakarison three times. Mr. Zakarison would not show the Watsons a copy of the proposed lease until they paid the deposits. The Watsons decided not to purchase the mobile home.

On July 23, 1990, Ms. Gillette filed a complaint against the Zakarisons, and on July 31 the parties stipulated to a temporary injunction against Mr. Zakarison's interference with the sale of her mobile home. Ms. Gillette sold her mobile home to another purchaser in October 1990 for $18,500 without complying with Mr. Zakarison's conditions.

The trial court awarded Ms. Gillette $805, consisting of damages of $526 caused by delay between the Watsons' proposed sale closing date and the actual sale closing date, $150 for the security deposit, and $129 costs. The court also awarded Ms. Gillette attorney fees of $4,781.22.

First, Mr. Zakarison assigns error to portions of findings of fact 16 and 17: "[The] Watsons requested to see the proposed lease on three occasions." "[The Watsons] could not get Zakarison to show them a copy of the proposed lot lease." These findings are amply supported by the detailed testimony of Mr. Watson. Mr. Zakarison testified he believed supplying a lease was pointless because the Watsons would not sign the lease with the deposit contingencies. Although his testimony describes his motivation, it does not refute the findings. There is no error.

Next, Mr. Zakarison contends he did not violate the Act by conditioning the assignment of the lease on repairs and landscape improvements of Ms. Gillette's mobile home. He argues his standards were the same as those imposed on new tenants and were reasonable and consistent with the regulations he outlined in "Guide to Happier Living". He also argues his demands did not deny Ms. Gillette the right to sell her mobile home.

The Act regulates the special problems posed by the mobile home, which may be characterized as a vehicle and as a building. *United States v. 19.7 Acres of Land*, 103 Wn.2d 296, 299, 692 P.2d 809 (1984). A landlord may impose aesthetic standards for mobile homes. *See* RCW 59.20.070(7).[2] A landlord may not, however, deny tenants their right to sell their mobile homes or require their removal because of a sale. RCW 59.20.070(1).

---

[2] A mobile home park landlord shall not
require the removal of a mobile home for the sole reason that the mobile home has reached a certain age. Nothing in this subsection shall limit a landlord's right to exclude or expel a mobile home for any other reason provided such action conforms to chapter 59.20 RCW or any other statutory provision. RCW 59.20.070(7). Ms. Gillette does not contend Mr. Zakarison is seeking removal of her home based on age.

■ Although Ms. Gillette and Mr. Zakarison had no written rental agreement, under RCW 59.20.050(1), an unwritten rental term is deemed 1 year and automatically renewed for 1 year. RCW 59.20.090(1). Therefore, an implied rental agreement existed, which was assignable.

■ Although a mobile park landlord must approve or disapprove a rental agreement assignment on the same basis as any new tenant, consent to an assignment must not be unreasonably withheld. RCW 59.20.073(4). The first three times Ms. Gillette attempted to sell her mobile home, Mr. Zakarison demanded completion of repairs and improvements as a condition to the transfer of the lease. However, a landlord may not "charge or collect a deposit or security for performance if the parties have not entered into a written rental agreement." RCW 59.20.160. Thus, he could not demand that Ms. Gillette make them.

Unchallenged finding of fact 13 and that portion of finding of fact 17 not challenged state Ms. Wilcox and the Watsons refused to purchase the mobile home from Ms. Gillette because of the demand for deposits to make repairs and improvements. The court found Mr. Zakarison's conduct unreasonable under RCW 59.20.073(4). It concluded under RCW 59.20.070(1) Ms. Gillette's right to sell her mobile home was denied. It also concluded Mr. Zakarison's requirements constituted an unlawful and intentional interference with Ms. Gillette's sale, violating RCW 59.20.060.[3] There was no error.

Mr. Zakarison also contends his demands did not constitute "entrance" or "exit fees" in violation of RCW 59.20.060-(2)(e). RCW 59.20.060(2)(e) prohibits any executed rental agreement from allowing landlords to charge mobile home tenants either an "entrance" or "exit fee". Here, there was no

---

[3]Conclusion of law 1 provides:

"Because of the failure of two sales, demand for landscaping deposit, for deposit to insure cosmetic repairs, ZAKARISON's marking all the dents, scratches and blemishes with tape, his failure to provide Watsons with a written lease until they agreed and paid a performance deposit to insure landscaping and cosmetic repairs, he did unlawfully and intentionally interfere with GILLETTE's attempt to sell her property, namely the mobile home, in violation of R.C.W. 59.20.060."

executed rental agreement and we do not address this contention.

■ Next, Mr. Zakarison contends a mobile home park owner does not violate the Act by conditioning a lot's transfer on completion of landscaping. Mr. Zakarison testified he expected the new tenant to install "permanent" landscaping at his or her own expense. This demand violates RCW 59.20.100,[4] which permits a tenant to remove improvements at the termination of the lease.

The judgment is affirmed.

Ms. Gillette requests attorney fees on appeal under RCW 59.20.110 and RAP 18.1. She is the prevailing party under the Act and is entitled to reasonable attorney fees on appeal.

SHIELDS, C.J., and SWEENEY, J., concur.

---

[4]RCW 59.20.100 provides in part: "except a natural lawn, purchased and installed by a tenant on a mobile home lot *shall remain the property of the tenant* even though affixed to or in the ground and may be removed or disposed of by the tenant prior to the termination of the tenancy: PROVIDED, That a tenant shall leave the mobile home lot in substantially the same or better condition than upon taking possession." (Italics ours.)