# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION  II

| | |
|---|---|
| TST, LLC dba OAKS MOBILE AND RV COURT, | No.  53352-9-II |
| Petitioner, | |
| v. | |
| MANUFACTURED HOUSING DISPUTE RESOLUTION PROGRAM OF THE OFFICE OF THE ATTORNEY GENERAL OF THE STATE OF WASHINGTON, | PUBLISHED OPINION |
| Respondent. | |

LEE, C.J. — TST, LLC dba Oaks Mobile and RV Court appeals the administrative law judge's (ALJ) decision granting the Manufactured Housing Dispute Resolution Program's (the Program) motion for summary judgment.  TST argues that the ALJ committed an error of law by erroneously interpreting the provisions of the Manufactured/Mobile Home Landlord-Tenant Act (MHLTA), chapter 59.20 RCW, governing rent increases.  We disagree and affirm the ALJ's order granting summary judgment.

## FACTS

On June 1, 2016, TST acquired Oaks Mobile and RV Court from Tom Esteb Properties, LLC.  No current, written leases existed at that time.  But a rent roll showing that the tenants were paying $320 per month did exist.  The rents had not been raised for 10 years.

After acquiring Oaks Mobile, TST sent a letter to the residents notifying them that Oaks Mobile was under new ownership, providing the new address rents should be mailed to, and stating

that rent payments had to be postmarked by the 5th of the month. On July 1, 2016, TST sent a letter to the residents of Oaks Mobile, stating that TST was in the process of creating new leases and new rules and regulations for the mobile home park.

On July 15, 2016, TST provided the residents with the new lease agreement and rules and regulations. TST asked that the residents review and sign all the paperwork by August 5, 2016. Donna Gosney, Lorraine Simoni, and Nanette Stickley, all residents of Oaks Mobile, did not sign the lease agreements.

Walter Lane, another resident of Oaks Mobile, signed the lease agreement, effective July 1, 2016, for a period of one year and extended on a month-to-month basis thereafter. The agreement included a provision stating,

> The monthly rent shall be increased only by prior written notice of three months or more preceding the beginning of any month or period of tenancy. In case of increase of rent, it is understood that all other provisions of this agreement shall remain in full force, changed only by the increased in the amount of rent.

Administrative Record (AR) at 62.

On August 20, 2016, TST sent a letter to the residents stating that if they were on a current valid lease agreement, TST would abide by that lease. The letter also informed residents that if they could not provide a current, valid lease or return the new lease agreement to TST, they would "be regarded as not having any lease at all." AR at 170.

On August 29, 2016, TST sent a "90 Day Notice to Change Rent" to Lane, Gosney, Simoni, and Stickley, notifying them of a rent increase from $320 to $525 per month. The rent increase would become effective on December 1, 2016.

On August 28, 2017, TST notified Gosney, Simoni, and Stickley of a rent increase from $525 to $550 per month effective December 1, 2017. And on September 6, 2017, TST notified Lane of a rent increase from $525 to $550 per month effective January 1, 2018.

On December 15, 2017, TST entered into written rental agreements with Gosney, Simoni, and Stickley. TST also entered a new lease agreement with Lane. These agreements commenced on January 1, 2018 and expired on December 31, 2018.

Lane, Gosney, Simoni, and Stickley all filed complaints against TST with the Program based on the rent increases. The Program found that TST violated the MHLTA and issued a notice of violation. The Program concluded that TST violated former RCW 59.20.090(2) (2010)[1] by increasing rent without providing proper notice. TST appealed the notice of violation and requested an administrative hearing.

The Program filed a motion for summary judgment. TST did not dispute any of the underlying facts. TST argued that a proper interpretation of the relevant statutes allowed for the rent increases and that, under the terms of the rental agreement Lane executed, they were permitted to raise his rent, regardless of the interpretation of the statute.

In its decision, the ALJ specifically noted that there were no genuine issues of material fact. The only issue in the dispute was the differing interpretations of the relevant statutes. The ALJ concluded that under former RCW 59.20.090(2) rent may only be increased at the end of the

---

[1] Former RCW 59.20.090(2) provides,

> A landlord seeking to increase the rent upon expiration of the term of a rental agreement of any duration shall notify the tenant in writing three months prior to the effective date of any increase in rent.

rental term. The ALJ granted the Program's motion for summary judgment and affirmed the notice of violation against TST.

TST filed a petition for review in the superior court. The superior court certified the case for direct review by this court. Based on the superior court's certification, a commissioner of this court granted discretionary review.[2]

## ANALYSIS

A.    STANDARD OF REVIEW

The Washington Administrative Procedures Act[3] (APA) governs our review. RCW 59.30.040(10). Under the APA, the party challenging an agency action has the burden of demonstrating the action is invalid and must show substantial prejudice. RCW 34.05.570(1)(a), (d). A reviewing court may reverse an administrative order if the order violates the constitution, exceeds statutory authority, or involves an error in interpreting or applying the law. RCW 34.05.570(3)(a), (b), (d). In this case, we will grant relief only if the agency has erroneously interpreted or applied the law.[4] RCW 34.05.570(3)(d).

Additionally, we are reviewing the ALJ's order granting summary judgment. "While the APA does not explicitly authorize agencies to use summary judgment procedures, case law has established that judicial review of such summary proceedings must 'overlay the APA standard of

---

[2]  Ruling Accepting Direct Review (July 22, 2019).

[3]  Chapter 34.05 RCW.

[4]  TST does not apply the standards set forth in the APA in its briefing. It is clear that the only issue presented is the correct interpretation of RCW 59.20.090(2), which is an issue of law. *See Jametsky v. Olsen*, 179 Wn.2d 756, 761-62, 317 P.3d 1003 (2014). Therefore, we apply the standard for an erroneous interpretation of the law from the APA. RCW 34.05.570(3)(d).

review with the summary judgment standard.'" *City of Seattle v. American Healthcare Services, Inc.*, 13 Wn. App. 2d 838, 850, 468 P.3d 637 (2020) (quoting *Verizon Nw., Inc. v. Emp't Sec. Dep't*, 164 Wn.2d 909, 915-16, 194 P.3d 255 (2008)).

"'Summary judgment is appropriate only where the undisputed facts entitle the moving party to judgment as a matter of law.'" *Id.* (quoting *Verizon*, 164 Wn.2d at 916). We "'view the facts in the record in the light most favorable to the nonmoving party.'" *Id.* (quoting *Verizon*, 164 Wn.2d at 916).

B.      LEGAL PRINCIPLES OF STATUTORY INTERPRETATION

Statutory interpretation is a question of law we review de novo. *Jametsky v. Olsen*, 179 Wn.2d 756, 761-62, 317 P.3d 1003 (2014). The goal of statutory interpretation is to ascertain and carry out the legislature's intent. *Id*. When possible, we give effect to the plain meaning of the statute as an expression of legislative intent. *Id*. The plain meaning of a statute is "derived from the context of the entire act as well as any 'related statutes which disclose legislative intent about the provision in question.'" *Id.* (quoting *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 11, 43 P.3d 4 (2002)). We give effect to all the language in the statute and do not render any portion meaningless or superfluous. *In re Welfare of K.M.M.*, 187 Wn. App. 545, 573, 349 P.3d 929 (2015).

When the plain language of the statute is unambiguous, no further construction or interpretation is necessary. *Jametsky*, 179 Wn.2d at 762. However, if we determine that the statute is subject to more than one reasonable interpretation, then the statute is ambiguous. *Id*. If a statute is ambiguous, then we "'may resort to statutory construction, legislative history, and relevant case

law for assistance in discerning legislative intent.'" *Id.* (quoting *Christensen v. Ellsworth*, 162 Wn.2d 365, 373, 173 P.3d 228 (2007)).

1.      Former RCW 59.20.090

Former RCW 59.20.090(2) states, "a landlord seeking to increase the rent upon expiration of the term of a rental agreement of any duration shall notify the tenant in writing three months prior to the effective date of any increase in rent." Our Supreme Court has determined that "[b]y its plain language, former RCW 59.20.090(2) does not give a landlord an immutable right to increase rent; it is a 'limitation' on rent increases." *Western Plaza, LLC. V. Tison*, 184 Wn.2d 702, 708, 364 P.3d 76 (2015) (quoting *McGahuey v. Hwang*, 104 Wn. App. 176, 182, 15 P.3d 672, *review denied*, 144 Wn.2d 1004 (2001)). "[T]he only limitation on increases of any kind found in the MHLTA is the requirement . . . that rental rates . . . be increased only upon lease expiration and three months' notice." *McGahuey*, 104 Wn. App. at 182. Thus, under former RCW 59.20.090(2), a landlord seeking to increase the rent must do so only upon the expiration of the lease.

2.      Former RCW 59.20.060 (2012)

Former RCW 59.20.060(1) states that "[a]ny mobile home space tenancy regardless of the term, shall be based upon a written rental agreement, signed by the parties" and shall contain certain terms.[5] Where a mobile home space does not have a written rental agreement, the

---

[5] After this dispute arose, RCW 59.20.060(2) was amended in 2019, and now reads:

> Any rental agreement executed between the landlord and tenant shall not contain any provision:
>
> . . .

agreement is considered an "implied rental agreement" for a period of one year, renewed automatically for one year. *Gillette v. Zakarison*, 68 Wn. App. 838, 842, 846 P.2d 574 (1993). Further, a rental agreement exists where tenants live in a mobile park and provide rent to the landlord while using the mobile park based on rules provided by the landlord. *See Allen v. Dan and Bill's RV Park*, 6 Wn. App. 2d 349, 370, 428 P.3d 376 (2018), *review denied*, 194 Wn.2d 1010 (2019).

> Former RCW 59.20.060(2)(c) prohibits any provision in a rental agreement,
>
> [w]hich allows the landlord to alter the due date for rent payment or increase the rent: (i) During the term of the rental agreement if the term is less than one year, or (ii) more frequently than annually if the term is for one year or more: . . . PROVIDED FURTHER, That a rental agreement for a term exceeding one year may provide for annual increases in rent in specified amounts or by a formula specified in such agreement.

In addition, a rental agreement may not contain any provision waiving a tenant's rights or remedies under MHLTA. Former RCW 59.20.060(2)(d).

C.   INTERPRETATION OF FORMER RCW 59.20.090(2) AND FORMER RCW 59.20.060(2)

TST argues that the ALJ incorrectly interpreted the law because former RCW 59.20.090(2) and former RCW 59.20.060(2)(c) should be read together. TST asserts that if former RCW 59.20.090(2) prohibits a landlord from increasing the rent during the term of a rental agreement, former RCW 59.20.060(2)(c) is rendered meaningless. Under TST's interpretation of former RCW 59.20.090(2) and former RCW 59.20.060(2)(c), if a rental agreement is for longer than one

---

(c) Which allows the landlord to alter the due date for rent payment or increase the rent: (i) During the term of the rental agreement if the term is less than two years, or (ii) more frequently than annually if the initial term is for two years or more.

7

year then the landlord may increase rent during the term of the lease as long as the increase does not occur more than once annually and the landlord provides three months' notice of the increase. TST asserts that former RCW 59.20.060(2)(c) only prohibits interim rent increases during rental agreements that are less than one year. We disagree.

Former RCW 59.20.090(2) is a limitation on rent increases, while former RCW 59.20.060(2)(c) "sets out the required and prohibited *provisions* in MHLTA leases." *Western Plaza, LLC*, 184 Wn.2d at 708 (emphasis added). As noted above, former RCW 59.20.090(2) allows a landlord to increase the rent at the expiration of the lease with three months' notice. *McGahuey*, 104 Wn. App. at 182. On the other hand, the plain language in former RCW 59.20.060(2) prohibits any *provisions* in a lease agreement that allow for the increase of rent during the term of the rental agreement if the term of the agreement is less than one year, or more frequently than annually if the term is for one year or more. Further, former RCW 59.20.060(2)(c) requires that any provision in a rental agreement permitting an increase in rent during the term of the rental agreement set forth the increases in specified amounts or by a specified formula.

Thus, reading the statutes together, a provision in a rental agreement can allow for a rent increase on a date other than the expiration date if the rental agreement term is for one year or more and the increase is set forth as a specified amount or specified formula. And the rental increase may not occur more frequently than annually. If the lease agreement does not include a provision addressing rent increases and the landlord increases the rent, the increase must occur upon the date of lease expiration with three months' notice. Former RCW 59.20.090(2). This interpretation of the statutes is in accordance with one of the significant purposes of the MHLTA,

which is "to give heightened protection to mobile home tenants" because it provides predictability as to the timing of rent increases. *McGahuey*, 104 Wn. App. at 182.

The ALJ correctly interpreted former RCW 59.20.090(2). Therefore, TST has failed to meet its burden to show that the ALJ erroneously interpreted the law, and we affirm the ALJ's order granting the Program's motion for summary judgment.

D.    ADDITIONAL ARGUMENTS

In addition to arguing that the ALJ erroneously interpreted the law regarding former RCW 59.20.090(2), TST appears to argue that summary judgment was improper because the rent increases were valid under the existing or implied rental agreements with the parties. The terms of Lane's rental agreements do not permit the rent increases here. And TST's arguments regarding the implied lease agreements rely on their interpretation of former RCW 59.20.090(2), which we have rejected. Therefore, TST's additional arguments fail.

1.    Rent Increases Under Lane's Written Rental Agreement

TST argues that rent increases for Lane were valid because the increases were permitted by the rental agreement and were no more frequent than annually; therefore, the Program was not entitled to judgment as a matter of law and summary judgment was not proper. We disagree.

Absent disputed facts, the legal effect of a contract is a question of law we review de novo. *In re Estate of Petelle*, 195 Wn.2d 661, 665, 462 P.3d 848 (2020). Our primary goal is to ascertain the intent of the parties. *Berg v. Hudesman*, 115 Wn.2d 657, 663, 801 P.2d 222 (1990). We determine intent by focusing on the objective manifestation of the parties in the written contract. *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005). Accordingly, we consider only what the parties wrote; giving words in a contract their ordinary,

usual, and popular meaning unless the agreement as a whole clearly demonstrates a contrary intent. *Id.* at 503-04. A contract "should be construed as a whole and, if reasonably possible, in a way that effectuates all of its provisions." *Colo. Structures, Inc. v. Ins. Co. of the W.*, 161 Wn.2d 577, 588, 167 P.3d 1125 (2007) (footnote omitted).

Here, the one-year rental agreement executed between TST and Lane, which became effective on July 1, 2016, states,

> The monthly rent shall be increased only by prior written notice of three months or more preceding the beginning of any month or period of tenancy. In case of increase of rent, it is understood that all other provisions of this agreement shall remain in full force, changed only by the increased in the amount of rent.

AR at 62. The rental agreement does not state that the rental increases are limited to annually nor does the rental agreement set forth any specified amount of rental increase or any specified formula upon which the increase will be calculated. Thus, although former RCW 59.20.060(2)(c) allows for rent increases if the initial term of a rental agreement is for one year or more, Lane's rental agreement fails to comply with former RCW 59.20.060(2)(c) because it fails to limit rental increases to annually and it fails to set forth the amount of any rent increase or the formula upon which the rent increase will be calculated. Therefore, because the rental agreement fails to limit the frequency of rent increases and fails to set forth the specific amount of increase or a formula upon which to calculate an increase, the provision in Lane's rental agreement allowing for rent increases violates former RCW 59.20.060(2)(c) and is unenforceable. *See Jordan v. Nationstar Mortg., LLC*, 185 Wn.2d 876, 883, 374 P.3d 1195 (2016); *W. Plaza, LLC*, 180 Wn. App. at 23.

Because the provision regarding rent increases in Lane's rental agreement is unenforceable, TST cannot rely on that provision to justify its interim rent increases. TST could only increase

Lane's rent at the expiration of his rental term under former RCW 59.20.090(2). The ALJ properly granted summary judgment.

    2.      Rent Increases Under Gosney's, Simoni's, and Stickley's Implied Agreements

TST argues that because implied rental agreements for Gosney, Simoni, and Stickley were for a duration of one year, midterm rent increases were not prohibited. However, because these arguments are based on TST's interpretation of former RCW 59.20.090(2), which we have rejected above, we disagree.

Where a mobile home space does not have a written rental agreement, the agreement is considered an "implied rental agreement" for a period of one year, renewed automatically for one year. *Gillette*, 68 Wn. App. at 842. Further, a rental agreement exists where tenants live in a mobile park and provide rent to the landlord while using the mobile park based on rules provided by the landlord. *See Allen*, 6 Wn. App. 2d at 370.

Gosney, Simoni, and Stickley were living in Oaks Mobile, paying rent, and were given the rules and regulations by TST; thus, a rental agreement existed with TST. *See id*. Because there was no *written* agreement, an implied rental agreement existed for a period of one year. *See Gillette*, 68 Wn. App. at 842. The record shows that TST began collecting rent from Gosney, Simoni, and Stickley in August 2016, thus the one-year implied rental agreement began at that time.[6]

---

[6] The ALJ concluded that "a new implied rental agreement term began on or around June 1, 2016, when TST, LLC, took possession of the Oaks Mobile and RV Court." AR at 558. While the implied rental agreement began on August 1, 2016, we do not reverse the decision on this basis because regardless of whether the implied rental agreement began on June 1 or August 1, TST increased the rent on a date other than the date of expiration. Therefore, the ALJ did not err in concluding that TST violated former RCW 59.20.090(2).

Because there is no written rental agreement and there were no provisions about rent increases in the rules and regulations, TST's rent increase is governed by former RCW 59.20.090(2). Thus, TST could only increase the rent upon expiration of the rental term, which was August 1, 2017. Therefore, TST's attempt to increase the rent effective December 1, 2016 and December 1, 2017 are invalid. Accordingly, the ALJ properly granted the Program's motion for summary judgment.[7]

## ATTORNEY FEES ON APPEAL

TST requests attorney fees on appeal under RCW 4.84.350(1).

RCW 4.84.350(1) states:

> Except as otherwise specifically provided by statute, a court shall award a qualified party that prevails in a judicial review of an agency action fees and other expenses, including reasonable attorneys' fees, unless the court finds that the agency action was substantially justified or that circumstances make an award unjust. A qualified party shall be considered to have prevailed if the qualified party obtained relief on a significant issue that achieves some benefit that the qualified party sought.

Here, TST did not obtain any relief on a significant issue that achieves some benefit that TST sought. Therefore, TST did not prevail in this judicial review of an agency action, and we deny TST's request.

---

[7] TST assigns error to the ALJ's conclusion that "[w]hile a party, such as a landlord, can adjust the rent amount during the term for property taxes and/or utility assessments or charges, such increases must be articulated in the rental agreement and approved by both the landlord and tenant, at the time the contract is signed by both parties. However, such a discussion, pertaining to RCW 59.20.060(2)(c), is beyond the scope of the present matter." AR at 560. TST does not offer any argument or authority for this alleged error in its opening brief. In the absence of argument or authority, we do not address TST's assignment of error. RAP 10.3(a)(6); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

No. 53352-9-II

We affirm the ALJ's order granting the Program's motion for summary judgment and affirming the notice of violation.

_____, C.J.
Lee, C.J.

We concur:

_____
Maxa, J.

_____
Sutton, J.

13