[No. 324.   Decided January 11, 1892.]

CHARLES JACKSON, *Respondent*, v. JOSEPH TATEBO, *Appellant*.

CANCELLATION OF DEED—EVIDENCE—PROOF OF TITLE—QUIETING TITLE—EQUITY—PRAYER FOR RELIEF.

In an action to cancel a deed, fraudulently procured, plaintiff is not bound to prove title in his grantor, where defendant's claim of title rests on a deed from plaintiff and a quitclaim deed from plaintiff's grantor.

In such an action, a warranty deed may be canceled, although it actually conveys nothing, on account of the defective description of the land sought to be conveyed.

Under our statute, an action to quiet title may be maintained by persons having merely an equitable title.

Although an action may be termed a suit to remove a cloud, and the complaint may allege that a certain deed is a cloud on plaintiff's title if the facts stated in the complaint show a case where a deed was obtained by fraud, and plaintiff asks to be relieved from such fraudulent conveyance and to have the deed canceled, a court of equity has power to grant such relief as the facts in the case require.

In an action to cancel a deed, where the evidence shows that the plaintiff is an ignorant Indian, with a very limited knowledge of the English language, and with no knowledge of legal transactions, or the force or effect of legal instruments, the burden of proof is shifted from defendant to show that the import of the deed was understood by plaintiff at the time he signed it.

In such a case, where the certificate of the officer taking the acknowledgment fails to show that he made known the contents of the deed to the grantor, before acknowledgment, the certificate cannot be accepted as proof of the grantor's knowledge of the contents of the deed.

*Appeal from Superior Court Kitsap County.*

The facts are fully stated in the opinion.

*Tustin, Gerrin & Crews,* for appellant.
*Strudwick & Peters,* and *C. S. Preston,* for respondent.

The opinion of the court was delivered by

DUNBAR, J.—This is an action brought by plaintiff to cancel a deed of conveyance made by plaintiff to defendant, and alleged to have been obtained from plaintiff by fraud. Plaintiff alleges that he is a native born Indian; that he has severed his tribal relations, and adopted the customs of the whites, and that he was the owner in severalty and in possession of the lands in controversy. He claims title to said land by warranty deed from John Simmons, bearing date August 19, 1875. The description of the land in said deed was as follows:

"The following described tract or parcel of land situate, lying and being in the county of Kitsap and Territory of Washington, and particularly bounded and described as follows, to wit: Ten acres of land described as follows: From a certain stake to a certain stake, south of same, in lot one (1), section nineteen (19) of township twenty-four (24), north of range two (2) east of Willamette meridian."

The deed dated the 23d day of June, 1890, from Jackson to Tatebo, and the one claimed by appellant to be

fraudulent, contains the same description. It is also a warranty deed, and both deeds are admitted to be duly recorded in the proper recording office in Kitsap county.

It is urged by defendant that plaintiff cannot recover in this action, for the reason that there was no testimony showing that at the beginning of this suit he was the owner of any of this property; that the deed from John Simmons to plaintiff was too indefinite to convey any land; and further, that no title was shown in Simmons. It cannot be gainsaid that the description in the deed from Simmons to plaintiff is so indefinite and incomplete that it fails to convey any particular tract or parcel of land; and under the general rule, the plaintiff would not only be bound to show a conveyance from his grantor, but to prove title in his grantor. But the defendant is basing his rights in this case on a deed from the plaintiff and a quitclaim deed from the plaintiff's grantor, and claiming title from the same grantor. In such a case the rule is changed, and he will not be allowed to dispute his grantor's title. We think this doctrine is so firmly established that it cannot be successfully contradicted, and we cite in support of it: *Sawyer v. Campbell*, 130 Ill. 186 (22 N. E. Rep. 458); *Fisher v. Moog*, 39 Fed. Rep. 665; Bigelow on Estoppel, 336; *Curlee v. Smith*, 91 N. C. 173. The general principle is well established, that a party is not allowed to plead or to prove any matter inconsistent with the terms of his deed. Bigelow on Estoppel, 336; *Heard v. Hall*, 16 Pick. 457. In *Taylor v. Needham*, 2 Taunt. 279, it is held that a lessee could not dispute the title of his lessor. The court says:

" It is truly stated that, in cases of a grant of feoffment, a stranger may plead 'did not grant, or did not enfeoff;' that plea denies not only the existence, but the efficacy of the supposed grant or feoffment. It brings in issue, therefore, the title of the grantor as well as the operation of the deed, and that plea would be a proper plea to bring in issue the execution, construction and efficacy of any deed of de-

mise.   Then the question comes, whether the assignee of the lease may be allowed to controvert the title of the lessor when the lessee under whom he derives could not controvert the title of the lessor, so that the assignee could have a better right than he from whom he derives it.   Exclusive of all the *dicta*, it would be a very odd thing in the law of any country if A could take by any form of conveyance a better or greater right than he had who conveys it to him; it would be contrary to all principle.   But it does not raise merely a general principle; for if you look into all the books upon estoppel you will find it laid down that parties and privies are estopped, and he who takes an estate under a deed is privy in estate, and therefore never can be in a better situation than he from whom he takes it."

So in this case, Tatebo's title cannot rise higher than its source, and its source is the title of Jackson and his grantor, and is subservient to it.   We are not able to find anything in *Burton v. Le Roy*, 5 Sawy. 510, either in the decision or in the *dicta*, that militates in the least against this doctrine. There the defendants were claiming under a common grantor with the plaintiff, but they were certainly not denying the title of the grantor, or putting it in issue.   In that case Olivera executed in favor of Joaquin Tico, who was his son-in-law, an instrument under which Tico claimed the land in question.   Sebsequently Olivera conveyed the same land to other persons by good and sufficient deed, and the court found that the instrument to Tico was not a deed, and that it was not even a contract to convey, there being no consideration shown in the instrument; that at the best it was nothing but a voluntary executory contract, and could not even be enforced against Olivera, and much less against subsequent purchasers for a valuable consideration.   The questions raised by appellant were not involved in that case.

In *Sawyer v. Campbell*, *supra*, which was a suit to quiet title, appellants Sawyer and Harding obtained from Horatio N. Heald and wife, who had previously sold their in-

terest in the land to Clayton, a quitclaim deed, and the quitclaim deed then executed contained this language:

"It being all the same property described in the deed heretofore made by us to Charles W. Clayton, dated October 9, 1867, filed April 2, 1870, and recorded in book 573, page 325 of the record of deeds of Cooke county, Illinois. This deed is made to clear away certain objections made to said last named deed, or to the abstract thereof, and is made to confirm the title of said grant claimed under said deed."

And the court said:

"The fact that Sawyer and Harding accepted this deed from Heald, and had it recorded, is an admission that they claim title under Clayton, and under the deed made by Heald to Clayton, and that this quitclaim deed was procured by them merely in confirmation of such title."

So in this case, the record shows that Jackson's alleged deed to Tatebo was executed on the 23d day of June, 1890, and filed for record on the 21st day of July, 1890, and that on the 23d day of July, 1890, Tatebo purchased from Simmons and wife (Jackson's grantors) a quitclaim deed more definitely describing the land which they had conveyed to Jackson fifteen years before. And in said quitclaim deed, after the description of the land, is incorporated this language:

"This deed is intended to correct and make certain the description of said land in a certain deed given by said John Simmons to one Charles Jackson, dated 19th day of August, 1875, and recorded in said Kitsap county on the 27th day of November, 1875."

Under the authority cited above, Tatebo procured such quitclaim deed in confirmation of his title from Jackson, and it is not claimed by him that he had title from any other source. In *Fisher v. Moog, supra*, it was decided that defendants, who claimed under a deed from a debtor, were estopped to deny his title, and to allege that com-

plainants were thus not injured by the conveyance. So in this instance, in a matter affecting only the interests of Jackson and Tatebo, Tatebo claiming only under Jackson's title, cannot be held to question or deny it. "If a grantee assert no other right or title than that of the common grantor, he will be precluded from denying that his grantor had title when he conveyed." Bigelow on Estoppel, p. 346. In ejectment suits, where both plaintiff and defendant claim title from the common source, the plaintiff is only required to prove such source of title, as neither party will be permitted to dispute such title. *Stafford v. Watson,* 41 Ark. 17; *McCready v. Lansdale,* 58 Miss. 877; *Griesler v. McKennon,* 44 Ark. 517; *Miller v. Hardin,* 64 Mo. 545; *Horning v. Swe·t,* 27 Minn. 277 (6 N. W. Rep. 782); *Whissenhunt v. Jones,* 78 N. C. 361; *Merchant's Bank v. H·irr·son,* 39 Mo. 434; 93 Am. Dec. 285; *Roosevelt v. Hungate,* 110 Ill. 599; *Orton v. Noonan,* 19 Wis. 370; *Curlee v. Smi·h,* 91 N. C. 173. There seems to be no reason for making a distinction in this regard between ejectments, and suits to quiet title or remove clouds.

The contention of appellant, that nothing is conveyed and therefore plaintiff cannot be injured by the attempted conveyance, is not tenable. If this conveyance is held to be a good conveyance, Tatebo or his grantee could compel Jackson to cure the defective deed, and convey the land actually intended to be conveyed by the deed, and Jackson would be bound by his warranty to make good the title to the land. And if he did *not* convey, he has a right to relief from his warranty, if nothing more.

So far as the contention of appellant is concerned, that in cases brought to quiet title the plaintiff must allege and prove possession, there is no question but that at common law such was the requirement, and it is equally well settled that plaintiff may be relieved from such a requirement by statutory enactment. *Holland v. Challen,* 110 U. S. 24 (3

Sup. Ct. Rep. 495), and cases cited; *Reynolds v. Craw-fordsville Bank*, 112 U. S. 405 (5 Sup. Ct. Rep. 213); *K ng v. Carpenter*, 37 Mich. 363; *Ormsby v. Barr*, 22 Mich. 80.

We think the provisions of our statute are substantially the same as the statutes construed in the cases cited above. It is asserted by plaintiff in his reply brief that in all the cases where it is held that possession need not be alleged, the title of plaintiff was unquestioned, and that the farthest any court has gone is to say that when the plaintiff had the unquestioned legal right he might proceed to remove a cloud though he himself was out of possession. Mr. Pomeroy, however, in his Equity Jurisprudence, § 1396, vol. 3, in speaking of the abrogation of the common law rule by statute, says: "In almost every instance the statutes, either by express terms or through broad and liberal language, allow the action to be maintained by persons having equitable titles; in other words, the plaintiff need *not* have the legal title." And many cases are cited sustaining the text.

But let us examine this case and see whether it is necessary to construe the statute with reference to it. While it is termed a suit to remove a cloud, and while it is alleged in the complaint that the alleged deed is a cloud on plaintiff's title, the facts stated in the complaint show a case where a deed was obtained by fraud, and plaintiff asks to be relieved from that fraudulent conveyance, and to have said deed canceled. Secs. 4, 5, 6, 7, 8 and 10 of plaintiff's second cause of action are as follows:

"4.   That heretofore, to wit, on or about the 23d day of June, 1890, the plaintiff agreed with the defendant to give to the defendant a power to sell the said tract of land for the plaintiff, as the plaintiff's agent, at the price of one hundred dollars ($100.00) per acre.

"5.   That thereafter, upon the same day, the defendant presented to the plaintiff a paper writing which the defendant then and there stated and represented to the plain-

tiff was a contract in writing empowering and authorizing the defendant to make a sale of the said lands for the plaintiff and for his benefit, at the price of $100.00 per acre, as theretofore agreed upon, and stated in paragraph four hereof. That the defendant then and there stated and represented to the plaintiff that the said paper writing contained only a recital of the terms and conditions of the agreement between the plaintiff and the defendant, relating to said lands, as alleged in paragraph four hereof.

"6. That the defendant then well knew that the plaintiff was an ignorant man, unable to speak or understand the English language, and unable to read writing or printed documents.

"7. That the plaintiff, relying entirely upon the said representations of the defendant, and verily believing that the said written paper was only a contract giving the defendant authority to sell the said tract of land for the plaintiff, as his agent, for the sum of $100.00 per acre, signed the said paper writing in the presence of two witnesses.

"8. That the defendant did not then, nor did he ever pay the plaintiff any sum of money whatsoever, nor did he then give nor has he ever given or paid to the plaintiff any consideration whatsoever for his signing the said paper writing.

"10. That the plaintiff has never or at any time signed or caused to be signed, or delivered or caused to be delivered, any writing or instrument of any kind, nature or description whatsoever, in any wise referring to, relating to or affecting the lands hereinabove described, other than the writing signed by the plaintiff as mentioned in paragraphs five, six and seven hereof."

And plaintiff prays that the court will decree a cancellation of the record of said instrument, and that by its decree it will compel the defendant to produce and deliver up for cancellation the said deed, and that the court will decree its cancellation. If this complaint, then, is to be construed in the light of its principal and material allegations, it is not an action to quiet title, or to remove a cloud; but it is an action in equity, asking to be relieved from the effect of a

fraud which has been perpetrated upon him. If the complaint is true, the plaintiff was, by trickery, artifice and deception, induced to make a deed that he did not intend to make, and he ought to be relieved from it. It is no answer to this action to say that the deed to defendant was worthless, or that plaintiff had no title and conveyed nothing, for if plaintiff were ever to obtain title to the land it would inure to the benefit of defendant or his grantees; and, as we have already observed, defendant could enforce a reformation of his deed. It was on this theory that the case was met by defendant; on this theory that the answer was interposed, and the case tried. It is certainly within the inherent power of a court of equity to take cognizance of just such a case as the pleadings in this case disclose, no matter under what name it presents itself, and the plaintiff should be entitled to such relief as the facts in the case may require. Fraud was as odious to the common law as it is to the statute, and not less vitiating in its effects upon a contract before, than since, the statute. Fraud is one of the main pillars of the jurisdiction of a court of equity, and there is no question of its competency prior to the statute to give relief in a case of this sort. Now, as the statute is made in affirmance, not in derogation, of the common law, it cannot have the effect of taking from a court of equity its jurisdiction, for it is a well settled rule that an affirmative statute does not repeal the common law. *Lillard v. McGee,* 4 Bibb, Ky. 165.

The evidence in this case conclusively shows that the plaintiff was an ignorant, unlettered Indian; that his knowledge of the English language was exceedingly limited; that he had no knowledge whatever of legal transactions or the force or effect of legal instruments. It is not disclosed by the testimony whether Tatebo was an Indian or not; but from the whole history of the case we think probably he was a half breed Indian. At all events he

seems to be related to the Indians, and related by marriage to Jackson. The evidence shows that he was a sharp, shrewd, energetic man, and that he acted as Jasckson's agent and confidential adviser, and that Jackson placed confidence in him and relied upon him. This is shown by Tatebo's testimony, as also by Jackson's. It also shows that he had been employed as deputy United States marshal and deputy constable, and was frequently employed as a detective. We think sufficient is established, and in fact uncontroverted, to shift the burden of proof and place it upon defendant to show that the import of the deed was understood by Jackson at the time he signed it.

"When an action is brought to set aside a deed executed by a person unable to read for misrepresentation of its contents or effcts, the burden of proof rests upon the defendant. In a case of this kind, part of the necessary proof of the execution of the instrument consists in showing that it was read or its contents made known to the grantor. An acknowledgment, however, according to the statute, before an officer designated by the law, is equivalent to proof that the grantor possessed knowledge of its contents, if the acknowledgment contains a certificate that the officer made known the contents to the grantor before acknowledgment." Devlin on Deeds, § 229.

But in this instance the certificate of the officer who took the acknowledgment fails to show that he made known the contents of the deed to Jackson before acknowledgment. "To read an instrument in English to a person who is unable to understand the language would seem to be insufficient." Devlin on Deeds, § 228. In this case there is a plain contradiction between the plaintiff and the defendant in regard to the understanding of the grantor with reference to the instrument executed. Jackson positively swears that when Tatebo interpreted the deed to him he interpreted it as a power of attorney to sell; that he thought it was a power of attorney; that it was a power of attorney

30—3 WASH.

that he had agreed to give, and that he had no thought
of executing any other instrument; and that he never had
received a cent from Tatebo in consideration of the execu-
tion of said instrument.   Mr. Tatebo swears that he inter-
preted the deed just as it was written, and that Jackson
understood it and consented to it, and that he had paid
Jackson, in consideration therefor, the sum of $100 in
money, and agreed to perform other services.   Tustin,
who drew the deed, swears that he read the same to Jack-
son, but does not swear that Jackson understood it.   In
fact, it is pretty plain that he did not understand it, and
that it was conceded that he did not, or there would have
been no necessity for an interpretation.   No one else who
was there understood the language in which the deed was
interpreted.   Tatebo swears that he paid Jackson one
hundred dollars in money, and agreed to render him
some services in the way of obtaining testimony in a law-
suit in which Jackson was engaged.   Tatebo's testimony
was substantially corroborated by witness Wilson, who
testified that he was standing on the street when Jackson
and Tatebo came up; that they asked him to show them
an attorney's office; that Tatebo told him that he had
bought ten acres of land from Jackson, and that Jackson
said he was satisfied; and that, without much preliminary
talk, Tatebo pulled out one hundred dollars and paid it
to Jackson on the street; and that Wilson then piloted
them to an attorney's office to get the papers made out.
But this testimony, it seems to us, is not altogether a
probable story; at least, it is not in accordance with the
ordinary manner of doing business.   Ordinarily, in land
sales, where money is to be paid, it is paid at the time the
deed is made, and in the presence of the person who trans-
acts the business.   Had such been the case here, the court
would have had the benefit of the testimony of a well
known and responsible witness.   But, outside of the un-
usual transaction which Wilson testifies to, he is fairly im-

peached by Simmons, who swears that Wilson told him
that he did not see Tatebo pay Jackson any money. Sim-
mons also testifies that Tatebo told him, some time after
the deed was executed, that he was to pay Jackson three
hundred dollars for the land, and that he had not paid
him anything yet. According to the testimony, it is evi-
dent either that the consideration was very inadequate,
or that Tatebo did not allow that admirable quality of
mind, modesty, to influence him in estimating the value
of his services. The testimony shows that the value of
the land was estimated all the way from five hundred to
three thousand dollars, and, according to Tatebo's own
testimony, within one month from the alleged purchase,
he was holding the land at thirty-five hundred dollars,
and all the consideration claimed by the defendant was
one hundred dollars, and some services so intangible that
they cannot be specifically recited. Jackson is an un-
impeached witness, while Tatebo's reputation was shown
to be rather cloudy. It is true there seems to be some
discrepancy between the testimony of Jackson and Tustin
in relation to the payment of the sum of two dollars and
a half for the making of the deed, but it had been nearly
a year since the transaction, and concerning a matter of
so small importance, either witness could easily be mis-
taken, and so far as we can see, the contradiction is on an
entirely immaterial point, as Jackson would be equally
as liable to pay for the instrument, whether it was a deed
or power of attorney.

It is hard to arrive at the truth of a controversy where
the testimony is principally given by Indians who have a
very imperfect knowledge of the English language; and
while this court would ordinarily place great reliance upon
the findings of the trial judge, and would hesitate to set
them aside where the evidence seemed nearly equally bal-
anced, it would be more loth to disturb such findings in a
case of this kind, where the utterances of the witnesses

would have to be construed largely by aid of their ges-·
tures, movements and grimaces, as it is a matter of gen-
eral observation by those who are acquainted with the
Indian character and their mode of conversation, that
these are all component parts of an Indian's vocabulary.
From the whole testimony, we are unable to see that there
is any substantial error by the court below.

Judgment is affirmed.

ANDERS, C. J., and SCOTT, HOYT and STILES, JJ.,
concur.