

This opinion was filed for record
at 8:00 am on Nov. 25, 2015

Sor Ronald R. Carpenter
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| WESTERN PLAZA, LLC, | ) | |
| Petitioner, | ) | No. 90179-1 |
| v. | ) | En Banc |
| NORMA TISON, | ) | Filed NOV 2 5 2015 |
| Respondent. | ) | |

WIGGINS, J.—This is an unlawful detainer action subject to the Manufactured/Mobile Home Landlord-Tenant Act (MHLTA), chapter 59.20 RCW. At issue is whether a provision in a mobile home lot lease that purports to limit the landlord's ability to increase the rent when the lease renews conflicts with the MHLTA and whether the lease violates the statute of frauds. We hold that the provision is permissible under the MHLTA and that the writing and signatures on the lease satisfy the statute of frauds applicable to rental agreements for mobile home lots.[1] We affirm the Court of Appeals.

---

[1] The MHLTA applies to both "manufactured homes" and "mobile homes," though it uses slightly different definitions for each. *Compare* RCW 59.20.030(6), *with* RCW 59.20.030(8). This opinion uses the term "mobile home" for convenience.

## FACTS[2]

Norma Tison entered into a lease for a mobile home lot in October 2001. The lease was executed on a preprinted form prepared by Manufactured Housing Communities of Washington. It was a one-year lease with several handwritten provisions that Tison specifically negotiated. Relevant to this case, the lease called for a monthly rent of $345 and contained a negotiated provision (hereafter rent cap provision) that stated, "Every other year, rent will be raised no more than $10.00 for remaining tenancy."

Petitioner Western Plaza LLC purchased the mobile home park in February 2008. At that time, Tison's monthly rent was $375.[3] In March 2009, Western Plaza sent Tison a notice that her rent would be increased to $405 starting in July 2009. Tison began paying $385 per month, consistent with the rent cap provision; the parties dispute how these payments were considered by Western Plaza, and there is nothing in the record that indicates whether Western Plaza contemporaneously rejected any of Tison's $385 payments or indicated to her that it considered those payments partial. Regardless, this dispute does not affect the outcome of this appeal.[4]

In June 2011, Western Plaza informed Tison that her rent would increase to $495 starting in October 2011. Relying on the rent cap provision, Tison attempted to

---

[2] The trial court decided this case on cross motions for summary judgment, and there are disputed facts. However, these disputed facts do not affect the outcome of this appeal.

[3] Tyson's rent increased to $355 in October 2003, to $365 in October 2005, and to $375 in October 2007, consistent with the rent cap provision.

[4] Because we hold that Tison's lease satisfied the requirements of the MHLTA statute of frauds, we do not consider Tison's alternate argument that Western Plaza's acceptance of her payments constitutes part performance. Thus, the resolution of these disputed facts is irrelevant to this appeal.

pay the $395 she believed was due.[5] Western Plaza rejected her payments and initiated this unlawful detainer action.

Tison moved for summary judgment, arguing that Western Plaza was bound by the rent cap provision. Western Plaza argued that the rent cap provision was not enforceable because it conflicted with the MHLTA and violated the statute of frauds. The trial court denied Tison's motion for summary judgment and resolved the unlawful detainer action in Western Plaza's favor. The Court of Appeals reversed. *W. Plaza, LLC v. Tison*, 180 Wn. App. 17, 322 P.3d 1, *review granted*, 181 Wn.2d 1022, 336 P.3d 1165 (2014). We granted Western Plaza's petition for review and now affirm.

## ANALYSIS

The issue before us is whether the rent cap provision in Tison's lease is prohibited by the MHLTA, chapter 59.20 RCW. We are also asked to determine whether the rent cap provision violates the statute of frauds. To answer these questions, we apply well-established principles of statutory interpretation to chapter 59.20 RCW. These principles lead us to conclude that the MHLTA does not prohibit the rent cap provision and that Tison's lease does not violate the statute of frauds applicable to her mobile home lot lease. Further, we award Tison reasonable costs and attorney fees pursuant to RCW 59.20.110.

I.   Standard of Review

We review questions of statutory interpretation de novo. *Ass'n of Wash. Spirits & Wine Distribs. v. Wash. State Liquor Control Bd.*, 182 Wn.2d 342, 350, 340 P.3d 849

---

[5] This calculation is based on a $10 increase to $385 in 2009 and a $10 increase to $395 in 2011.

(2015). The court discerns legislative intent from the plain language enacted by the legislature, considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, amendments to the provision, and the statutory scheme as a whole. *Id.* (citing *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002)).

II.  The MHLTA Does Not Prohibit the Rent Cap Provision

The MHLTA controls the legal rights, remedies, and obligations arising from a rental agreement between a landlord and tenant regarding a mobile home lot. Western Plaza argues that the MHLTA does not allow the rent cap provision in Tison's lease to be enforced. We disagree because the MHLTA does not prohibit a properly executed agreement that limits the frequency of such rent increases.

RCW 59.20.090(2) provides, "A landlord seeking to increase the rent upon expiration of the term of a rental agreement of any duration shall notify the tenant in writing three months prior to the effective date of any increase in rent." By its plain language, RCW 59.20.090(2) does not give a landlord an immutable right to increase rent; it is a "limitation" on rent increases. *McGahuey v. Hwang*, 104 Wn. App. 176, 182, 15 P.3d 672 (2001). The parties to an individual lease are free to set further limits. *Cf. Little Mountain Estates Tenants Ass'n v. Little Mountain Estates MHC, LLC*, 169 Wn.2d 265, 269 n.2, 236 P.3d 193 (2010). Furthermore, RCW 59.20.060, which sets out the required and prohibited provisions in MHLTA leases, specifically discusses rent increases and does not prohibit rent cap limitations like the one in Tison's lease. *See* RCW 59.20.060(2)(c). The Court of Appeals correctly determined that the MHLTA does not prohibit the rent cap provision.

III.    The Rent Cap Provision Does Not Violate the Statute of Frauds

Washington's statute of frauds is purely statutory. *Labor Hall Ass'n v. Danielsen*, 24 Wn.2d 75, 87, 163 P.2d 167 (1945). This issue, therefore, is one of statutory interpretation. "Our fundamental purpose in construing statutes is to ascertain and carry out the intent of the legislature." *In re Marriage of Schneider*, 173 Wn.2d 353, 363, 268 P.3d 215 (2011). We determine legislative intent from the plain language enacted by the legislature, considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, amendments to the provision, and the statutory scheme as a whole. *Campbell & Gwinn, LLC*, 146 Wn.2d at 9-12.

*A. Summary of Analysis*

There are two statutes of frauds that are potentially applicable to the Tison lease: RCW 59.04.010, titled "Tenancies[6] from year to year abolished except under written contract"; and RCW 59.20.060, titled "Rental agreements—Required contents—Prohibited provisions."[7] (Boldface omitted.) Though neither is called a statute of frauds, these statutes govern the formal requirements for creating a valid lease. In deciding which of these statutes of frauds to apply to the MHLTA, we

---

[6] A "tenancy" is "[t]he possession or occupancy of land under a lease." BLACK'S LAW DICTIONARY 1694 (10th ed. 2014).

[7] There are two additional statutes of frauds governing interests in real estate: RCW 59.18.210, the residential landlord-tenant statute of frauds, and RCW 64.04.010, the general real estate statute of frauds. The Residential Landlord-Tenant Act of 1973, chapter 59.18 RCW, governs rentals of mobile homes, manufactured homes, or park models themselves; it does not govern tenancies regarding a mobile home lot separate from a mobile home itself. RCW 59.20.040. As discussed in greater detail below, RCW 59.04.010 creates an exception to, and takes the place of, RCW 64.04.010 for tenancies.

conclude that a lease under the MHLTA should be governed by the statute of frauds in the MHLTA.

RCW 59.20.060 requires that a lease be in writing and be signed by the parties. It provides in relevant part:

> (1) Any mobile home space tenancy regardless of the term, shall be based upon a written rental agreement, signed by the parties, which shall contain:
>
> (a) The terms for the payment of rent, including time and place, and any additional charges to be paid by the tenant. Additional charges that occur less frequently than monthly shall be itemized in a billing to the tenant;
>
> . . . .
>
> (j) A written description, picture, plan, or map of the boundaries of a mobile home space sufficient to inform the tenant of the exact location of the tenant's space in relation to other tenants' spaces.

RCW 59.20.060 is clearly a statute of frauds because it includes the same formal elements required by the common law statute of frauds. *Compare* RCW 59.20.060, *with* RESTATEMENT (SECOND) OF PROPERTY § 2.2 (1977). Neither this statute nor chapter 59.20 RCW mentions the necessity of an acknowledgement, and we have never interpreted the MHLTA to require acknowledgement.

RCW 59.04.010 is the general tenancies statute of frauds (chapter 59.04 RCW is titled "Tenancies" (formatting omitted)). RCW 59.04.010 refers expressly to tenancies and leases; it is a special statute of frauds that creates an exception to, and takes the place of, the general real estate statute of frauds, RCW 64.04.010,[8] for

___

[8] RCW 64.04.010, the real estate statute of frauds, is a general statutory provision. RCW 64.04.010 provides that "[e]very conveyance of real estate, or any interest therein, and every

tenancies. *Danielsen*, 24 Wn.2d at 87 (concluding that legislature must have intended to modify the deed requirements of RCW 64.04.010 when it enacted RCW 59.04.010). It provides:

> Tenancies from year to year[9] are hereby abolished except when the same are created by express written contract. Leases may be in writing or print, or partly in writing and partly in print, and shall be legal and valid for any term or period not exceeding one year, without acknowledgment, witnesses or seals.

RCW 59.04.010 requires a lease to be in writing; leases over one year are legal if they are in writing and acknowledged. As discussed below, the MHLTA presumes that a lease is for one year and that any lease automatically renews. *See* RCW 59.20.090(1). Under Washington law, any automatic lease renewal must be added to the term of the lease for determining compliance with the statute of frauds. *Danielsen*, 24 Wn.2d at 85. Thus, if RCW 59.04.010 applied to MHLTA leases, the presumption would be that every manufactured home lot lease would need to be acknowledged. Tison's lease satisfies the requirements of only the MHLTA statute of frauds.

*B. Structure, Language, and Purposes of the MHLTA*

1. Plain language of the statute

The plain language of chapter 59.20 RCW, supported by the structure of Title 59 RCW, the context in which the statute appears, and the purpose of the MHLTA all support our conclusion that the MHLTA statute of frauds is the only statute of frauds

---

contract creating or evidencing any encumbrance upon real estate, shall be by deed . . . ." Under RCW 64.04.020, "[e]very deed shall be in writing, signed by the party bound thereby, and acknowledged by the party before some person authorized by this act to take acknowledgement of deeds." (Reviser's note omitted.)

[9] A "tenancy from year to year" is a periodic tenancy that automatically renews for a year unless terminated at the end of the year by notice. BLACK'S, *supra*, at 1694. The default lease under the MHLTA is a tenancy from year to year. RCW 59.20.090(1).

that applies to manufactured home lot leases. First, the plain language of RCW 59.20.040 supports this conclusion:

> This chapter shall regulate and determine legal rights, remedies, and obligations arising from any rental agreement between a landlord and a tenant regarding a mobile home lot and including specified amenities within the mobile home park, mobile home park cooperative, or mobile home park subdivision, where the tenant has no ownership interest in the property or in the association which owns the property, whose uses are referred to as a part of the rent structure paid by the tenant. . . . Rentals of mobile homes, manufactured homes, or park models themselves are governed by the residential landlord-tenant act, chapter 59.18 RCW.

This action was brought to enforce or determine "legal rights, remedies, and obligations arising from [a] rental agreement between a landlord and a tenant regarding a mobile home lot." RCW 59.20.040 tells us that "[t]his chapter"—the MHLTA—regulates and determines these rights. The conclusion is inescapable that the statute of frauds established by RCW 59.20.060, requiring a writing but not an acknowledgement, regulates and determines this case.

### 2. The specific language of RCW 59.20.060 controls

Principles of statutory interpretation also support the conclusion that we apply the MHLTA statute of frauds to the MHLTA, instead of the earlier enacted and more general tenancy statute of frauds. A general statutory provision normally yields to a more specific statutory provision. *Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n*, 123 Wn.2d 621, 629-30, 869 P.2d 1034 (1994). "To resolve apparent conflicts between statutes, courts generally give preference to the more specific and more recently enacted statute." *Tunstall v. Bergeson*, 141 Wn.2d 201, 211, 5 P.3d 691 (2000).

8

RCW 59.04.010 modifies RCW 64.04.010 and is the general statute of frauds governing tenancies. These statutes, read together, require tenancies for more than a year to be in writing and to be acknowledged. They have been in effect since the territorial days. Neither statute expressly incorporates mobile homes or any other specific type of tenancy.

In contrast, RCW 59.20.060 is a statute of frauds that relates specifically to rental agreements for mobile home lots. Mobile home space tenancies "shall be based upon a written rental agreement [that is] signed by the parties." RCW 59.20.060(1). This is the requirement, regardless of the duration of the tenancy. *Id.* Additionally, as discussed in Part III.B.1 of this opinion, *supra*, RCW 59.20.040 of the MHLTA explicitly distinguishes between the rules governing the rental of mobile home lots from the rules governing other tenancies, such as the rental of mobile homes themselves. It would be illogical to apply two different statutes of frauds with different requirements to the same transaction, here a MHLTA rental agreement. Both statutes require a writing, but only one, the general tenancy statute of frauds, requires acknowledgement.

These statutes can be harmonized only by applying each statute to the specific transactions they regulate. RCW 64.04.010 applies to the transfer of title and requires that all conveyances of real estate be in writing and acknowledged, regardless of the duration of the conveyance. RCW 59.04.010 applies to tenancies generally and requires that leases over one year be in writing and acknowledged. RCW 59.20.060 applies specifically to mobile home lots and provides that leases over one year are valid if they are in writing; it does not require acknowledgement. It is otherwise

impossible to reconcile the statutes: a MHLTA lease lasting over a year is either governed by RCW 59.04.010 and requires acknowledgement or it is governed by RCW 59.20.060 and it does not.

There are other irreconcilable differences between the two statutory schemes. As mentioned earlier, RCW 59.04.010, titled "Tenancies from year to year abolished except under written contract," abolishes tenancies from year to year except when those tenancies are in writing and acknowledged. (Boldface omitted.) In the absence of a written agreement, tenancies under chapter 59.04 RCW result in a month-to-month tenancy, terminable at the will of either party upon proper notice. RCW 59.04.020. In contrast, the default lease under the MHLTA is a tenancy from year to year. RCW 59.20.090(1). In the absence of a written agreement, an unwritten term is deemed to be for one year and is automatically renewed, at the option of the tenant, for one year on the anniversary of the tenancy. *Gillette v. Zakarison*, 68 Wn. App. 838, 842, 846 P.2d 574 (1993) (citing RCW 59.20.090(1)).[10]

Any other reading ignores both the differences in the statutory provisions of Title 59 RCW and the legislature's decision to include an MHLTA-specific statute of frauds in chapter 59.20 RCW. Chapter 59.18 RCW is the Residential Landlord Tenant Act of 1973; RCW 59.18.210 continues to provide the formal requirements for

---

[10] We reject Western Plaza's attempts to harmonize the statutes. Western Plaza asserts that the writing expressly required in all leases by RCW 59.20.060(1) does not establish an irreconcilable conflict with RCW 64.04.010's requirement for greater formality in longer term leases. However, RCW 64.04.010 requires the same formality for every conveyance regardless of length; these formalities include writing and acknowledgement. RCW 64.01.010, .020. Additionally, even RCW 59.04.010 explicitly requires a writing for every lease; leases governed by that statute that last for over one year also require acknowledgement. The requirement of a writing always exists; Western Plaza's reading would render RCW 59.20.060(1) superfluous.

residential leases. Similarly, RCW 59.04.010 governs leases generally. This statute continues to apply to commercial leases and other leases not specifically covered by a separate chapter in Title 59 RCW. The legislature specifically enacted the MHLTA separately from the Residential Landlord Tenant Act because that act did not address the need, unique to mobile home owners, for stable, long-term tenancy. *See* 1977 FINAL LEGISLATIVE REPORT, 45th Wash. Leg. at 168.

We hold that the specific language of the MHLTA statute of frauds trumps the general requirement that leases for over a year be acknowledged under RCW 59.04.010, the general tenancy statute of frauds. RCW 59.20.060 specifically describes the requirements for complying with the statute of frauds under the MHLTA: all rental agreements must be based on a written rental agreement that is signed by the parties, regardless of the duration of the rental. RCW 59.20.060(1).

3. Purpose of the MHLTA

In addition to being supported by the plain language of RCW 59.20.040 and .060, this reading best gives effect to the very purposes for which the MHLTA was enacted. The legislature enacted the MHLTA, chapter 59.20 RCW, in 1977. The bill report echoes the findings of a 1975 staff report on landlord/tenant relationship problems in mobile home parks. *See* OFFICE OF PROGRAM RESEARCH, WASH. HOUSE OF REPRESENTATIVES, STAFF REPORT ON LANDLORD-TENANT RELATIONSHIP PROBLEMS IN MOBILE HOME PARKS (1975). The bill report specifically notes that the tenants of manufactured/mobile home parks have a unique problem: the expense of relocating their mobile homes if their tenancy is terminated:

> The most difficult problem currently experienced by the mobile home plot tenant is eviction from a lot with insufficient notice and without cause. Eviction can often be more devastating for a mobile home plot tenant than for the traditional residential tenant because the tenant of a mobile home plot must not only move all of his or her personal possessions, but must also expend in the vicinity of $1,000 - $2,000 to move his or her mobile home and, what is sometimes even more difficult, find a mover and a new lot.

1977 FINAL LEGISLATIVE REPORT, *supra*, at 168; *see also Holiday Resort Cmty. Ass'n v. Echo Lake Assocs.*, 134 Wn. App. 210, 224, 135 P.3d 499 (legislative purpose in enacting the MHLTA was to regulate and protect mobile home owners by providing stable, long-term tenancy for homeowners living in a mobile home park).

The MHLTA provides for stable, long-term tenancy by creating the presumption of a year-to-year periodic tenancy. Though it may seem counterintuitive to require only a writing for long-term leases of mobile home lots when other tenancies expressly require acknowledgement for leases over a year, MHLTA leases are fundamentally different from other tenancies. This difference is deliberate, due at least in part to the fact that "'[t]he park resident is in the unique position of owning his home while renting the land on which it is placed.'" OFFICE OF PROGRAM RESEARCH, *supra*, at 1 (quoting Lyle F. Nyberg, Note, *The Community and the Park Owner Versus the Mobile Home Park Resident: Reforming the Landlord-Tenant Relationship*, 52 B.U. L. REV. 810, 813 (1972)). This unique position results in unequal bargaining power between the park landlord and the mobile home tenant; these tenants require the security of a longer term. *Id.* at 4-5 (noting that short-term leases gave the park owner a near dictatorial authority because tenants are faced with the option of either abiding by the terms of

a new lease, including rent increases or other odious provisions, or relocating their residence at significant cost).

The purpose of the real estate statute of frauds is to prevent fraud in contractual undertakings. *Firth v. Lu*, 146 Wn.2d 608, 614, 49 P.3d 117 (2002) (citing *Miller v. McCamish*, 78 Wn.2d 821, 828, 479 P.2d 919 (1971)). The MHLTA specifically addresses concerns of fraud by requiring that all rental agreements under the MHLTA must be based on a written rental agreement that is signed by the parties, regardless of the duration of the rental. RCW 59.20.060(1). In most tenancies, acknowledgement serves as an additional protection against fraud in agreements that would encumber land for over a year. But unlike most leases, the presumption under the MHLTA is for a longer-term lease; acknowledgement provides an additional burden but no additional protections from fraud than a writing provides.

The legislature created these protections for renters of mobile home lots in the MHLTA. "Unless otherwise agreed rental agreements shall be for a term of one year," and landlords may not "offer a mobile home lot for rent to anyone without offering a written rental agreement for a term of one year or more." RCW 59.20.090(1), .050(1). "Any rental agreement of whatever duration shall be automatically renewed for the term of the original rental agreement, unless a different specified term is agreed upon." RCW 59.20.090(1). In the absence of a written agreement, an unwritten term is deemed to be for one year and is automatically renewed, at the option of the tenant, for one year on the anniversary of the tenancy. *Gillette*, 68 Wn. App. at 842 (citing RCW 59.20.090(1)). In short, the MHLTA creates the presumption of a multiyear lease.

As these provisions show, the purpose of the MHLTA was to encourage long-term leases of at least a year or even longer. But Western Plaza ignores the differences between the two statutory schemes and simply urges us to apply the general statute of frauds to the MHLTA. Under this analysis, any lease running for more than one year would have to be acknowledged. Requiring acknowledgment does not advance the legislature's intent to protect tenants through long-term leases—it is instead an additional burden that strips away the protections the legislature crafted for mobile home lot tenants.

Worse yet, applying the general tenancy statute of frauds, RCW 59.04.010, to the MHLTA leads to the conclusion that every MHLTA lease must be acknowledged unless the parties to the lease have agreed in writing to different terms. This result follows from RCW 59.20.090, which provides that every MHLTA lease is for one year unless otherwise specified and that every lease automatically renews unless a party exercises the right to terminate in terms consistent with the MHLTA. Under Washington law, any automatic lease renewal must be added to the term of the lease for determining compliance with the statute of frauds. *Danielsen*, 24 Wn.2d at 85. Thus, unless otherwise agreed between the parties, a MHLTA lease is for one year and automatically renews, making the lease term longer than one year and triggering the acknowledgement requirement of RCW 59.04.010. This cannot have been the intent of the legislature.

Indeed, Western Plaza's approach frustrates the legislature's intent to protect tenants in long-term rental agreements by eviscerating the protections of the MHLTA. Such resolution would create uncertainty for mobile home tenants in Washington

whose leases are similar to Tison's lease. Tison's lease is a standard form lease bearing the legend "prepared for use of paid members of MHCW [(the Manufactured Housing Communities of Washington)] by legal counsel – 1997." Clerk's Papers (CP) at 31-32 (formatting omitted). This standard form prepared by industry counsel includes signature blocks for landlord and tenant but not for acknowledgement. *Id.* Assuming that other landlords used this form or a similar one, Western Plaza's position would enable those landlords to assert the statute of frauds as a defense and invalidate the lease to the detriment of tenants. We cannot reconcile this reading with the purpose of the MHLTA.

We hold that the MHLTA statute of frauds, RCW 59.20.060, is the only applicable statute of frauds for a manufactured/mobile home lot lease and that Tison's lease satisfied these statutory requirements.[11]

IV. The Rent Cap Provision Runs with the Land

Finally, Western Plaza argues that the rent cap provision in Tison's lease is not enforceable against Western Plaza because it does not touch and concern the land and so is personal to the former park owner. *See 1515-1519 Lakeview Boulevard Condo. Ass'n v. Apt. Sales Corp.*, 146 Wn.2d 194, 202, 43 P.3d 1233 (2002). A provision that burdens land use in a way that limits the rights normally associated with ownership touches and concerns the land. *Id.* at 203-04. The MHLTA applies only to the lease of mobile home lots rather than leases of mobile homes themselves. RCW 59.20.040. Thus, MHLTA leases relate to land use. The rent cap provision in Tison's

---

[11] Because we hold that Tison's lease satisfied the requirements of the MHLTA, we do not consider Western Plaza's argument that the rent cap provision keeps this lease from being completed within a year.

lease clearly limits the rights normally associated with ownership of a mobile home park. *See* RCW 59.20.090(2). Tison's rent cap provision does touch and concern the land; it is therefore enforceable against Western Plaza.

## V. Attorney Fees

Tison requested attorney fees on appeal in compliance with RAP 18.1. Both the MHLTA and the lease provide that the "prevailing party shall be entitled to reasonable attorney's fees and costs." RCW 59.20.110; *see also* CP at 32. Tison is the prevailing party, and she is therefore entitled to reasonable attorney fees and costs on appeal. *Id.*

## CONCLUSION

Properly executed rent cap provisions such as Tison's are permissible under the MHLTA. Further, the writing and signatures on her lease satisfy the statute of frauds applicable to rental agreements for mobile home lots under RCW 59.20.060. We therefore affirm the Court of Appeals and remand for further proceedings consistent with this opinion, including an award of costs and attorney fees to Tison.

_____ Wiggins, J.

WE CONCUR.

_____    _____ González, J.

_____    _____ Owens, J.

_____ Fairhurst, J.

No. 90179-1

YU, J. (dissenting)—I agree with the majority that a rent cap provision is not prohibited by the Manufactured/Mobile Home Landlord-Tenant Act (MHLTA), chapter 59.20 RCW. I also agree that the MHLTA allows a landlord to increase rent with proper notice and procedures. However, I depart from the majority in its disregard of the statute of frauds for the purpose of reaching a particular result in this case. Nothing in the MHLTA creates or implies an exemption from the statute of frauds, which applies to leases of real property. Because Norma Tison's lease does not comply with the statute of frauds, its specific provisions are subject to modification upon the lease's annual renewal and the rent cap in this case was not an enforceable provision that carried forward in perpetuity. I respectfully dissent.

ANALYSIS

Under RCW 59.04.010, leases "shall be legal and valid for any term or period not exceeding one year, without acknowledgment, witnesses or seals." Conversely, to be enforceable for a period greater than one year, a lease must be

acknowledged.[1] *Labor Hall Ass'n v. Danielsen*, 24 Wn.2d 75, 88-89, 163 P.2d 167

(1945); *Stevenson v. Parker*, 25 Wn. App. 639, 642, 608 P.2d 1263 (1980);

William B. Stoebuck, *The Law Between Landlord and Tenant in Washington: Part

I*, 49 WASH. L. REV. 291, 316-17 (1974). Nothing in the statutory language,

legislative history, or underlying purposes compels a different result in the

MHLTA context.

A.    MHLTA leases are not exempt from the statute of frauds, and there is no
      irreconcilable conflict between them

We have the duty to harmonize statutes that relate to the same subject

wherever possible. *Beach v. Bd. of Adjustment of Snohomish County*, 73 Wn.2d

343, 346, 438 P.2d 617 (1968). The MHLTA and the statute of frauds plainly

apply to the same subject—leasehold encumbrances on real property. There is no

provision in the MHLTA that *explicitly* replaces or preempts the general tenancy

statute of frauds. The statute of frauds therefore applies unless it irreconcilably

conflicts with the specific provisions of the MHLTA. *See Ass'n of Wash. Spirits &

Wine Distribs. v. Wash. State Liquor Control Bd.*, 182 Wn.2d 342, 356, 340 P.3d

849 (2015); *Hallauer v. Spectrum Props., Inc.*, 143 Wn.2d 126, 147, 18 P.3d 540

(2001) (where two statutes address related subjects, the more specific statute

---

[1]Encumbrances on real estate normally must be by deed, and "[a] lease is an [e]ncumbrance." *Richards v. Redelsheimer*, 36 Wash. 325, 329, 78 P. 934 (1904). RCW 59.04.010 provides an *exception* (not a replacement) for leases of one year or less. *Id.* at 331.

prevails only "insofar as the statutes conflict"). It does not. While the MHLTA

certainly has provisions modifying some rules applicable to leases generally, these

provisions are perfectly consistent with RCW 59.04.010.

First, while RCW 59.20.040 provides that certain statutes do or do not apply

in determining "legal rights, remedies, and obligations arising from any rental

agreement between a landlord and a tenant regarding a mobile home lot," all the

specific statutes referenced relate to forcible entry and unlawful detainer actions.

None relate to the formation of leases. This makes perfect sense because the

rights, remedies, and obligations *arising from* a contract are not the same as

requirements for *entering into* a contract. The MHLTA also recognizes that both

landlords and tenants must comply with "other applicable statute[s], regulation[s],

or ordinance[s] of the state, county, or municipality" that are not found in the

MHLTA. RCW 59.20.070(5)(b); *see also* RCW 59.20.080(1)(i).

Second, while oral leases may be enforceable from month to month, *Labor

Hall*, 24 Wn.2d at 87-88, under the MHLTA the tenant is entitled to "a written

rental agreement, signed by the parties," for a lease of any duration, RCW

59.20.060(1). The plain language of this provision ensures a minimum of

formality for all MHLTA leases, even if the tenant chooses to enter a month-to-

month lease. *See* RCW 59.20.050(1). But the fact that RCW 59.20.060(1) creates

a minimum of formality for even the shortest MHLTA leases does not establish an

irreconcilable conflict with RCW 59.04.010's one-year limit on enforcing the provisions of written, unacknowledged leases.

Third, the duration of a lease subject to the MHLTA is presumptively one year. RCW 59.20.090(1). This provision does irreconcilably conflict with the general rule that where rent is paid on a monthly basis, a lease of indefinite duration is presumed to be month to month. RCW 59.04.020. But that rule is a presumption used when interpreting leases that *do not comply* with the statute of frauds. *Labor Hall*, 24 Wn.2d at 94. The fact that MHLTA leases are subject to a different interpretative presumption has no bearing on whether they are subject to the statute of frauds in the first place. This does not mean that every MHLTA lease must comply with the statute of frauds—it means that a MHLTA lease that does not comply with the statute of frauds is presumptively a one-year lease.

Finally, the MHLTA also provides that landlords must renew leases upon their annual expiration unless one of the statutorily enumerated causes for termination or nonrenewal is met. RCW 59.20.070(5), .080(1), .090(1). The MHLTA thus contemplates a presumptive lease term of one year (which is clearly enforceable under RCW 59.04.010) and adds a *qualified statutory* (not *absolute contractual*) right to renewal. It does not transform every MHLTA lease into a year-to-year agreement whose specific provisions must be renewed in perpetuity. In fact, a landlord acting in good faith has the right to modify the provisions of a

4

lease upon renewal so long as the modifications are not retaliatory and otherwise comply with the MHLTA's content and notice provisions. *See* RCW 59.20.020, .060, .070(5), .090(2); *Seashore Villa Ass'n v. Hagglund Family Ltd. P'ship*, 163 Wn. App. 531, 540-42, 260 P.3d 906 (2011); *McGahuey v. Hwang*, 104 Wn. App. 176, 182-83, 15 P.3d 672 (2001). There is nothing inconsistent about requiring a higher level of formality where a contract purports to abrogate this right.

There is no irreconcilable conflict between the MHLTA and the general tenancy statute of frauds, and nowhere does the MHLTA contain an explicit or implicit exemption. Under accepted principles of statutory interpretation, the statute of frauds applies to MHTLA leases and the analysis should end. In the interest of comprehensiveness, however, I note that the result compelled by the plain language is also supported by other sources of legislative intent.

B.     The legislature rejected an exemption from the statute of frauds

The legislative history unquestionably supports a holding that MHLTA leases are not exempt from the general tenancy statute of frauds. When we interpret statutes, "the legislature is presumed to be aware of its past legislation and judicial interpretations thereof." *In re Marriage of Little*, 96 Wn.2d 183, 189-90, 634 P.2d 498 (1981). But in this case, we need not merely presume that the legislature was aware of the existing statute of frauds when it drafted the MHLTA—the relevant legislative history proves it was.

5

An early version of the MHLTA proposed by the House of Representatives would have added a section to chapter 59.04 RCW, making it inapplicable to MHLTA leases. 1 HOUSE JOURNAL, 45th Leg., 1st Ex. Sess., at 1126, 1131 (Wash. 1977); 1 SENATE JOURNAL, 45th Leg., 1st Ex. Sess., at 1637, 1645 (Wash. 1977); *see also* RCW 59.04.900 ("This chapter does not apply to any rental agreement included under the provisions of chapter 59.18 RCW."). That section did not become part of the MHLTA as ultimately enacted. We must recognize that the legislature was aware of the statute of frauds, considered its application, and chose not to exempt MHLTA leases.

C.    Applying the statute of frauds does not undermine the purposes of the MHLTA

Finally, I cannot hold that as a matter of law, applying the statute of frauds violates the purposes of the MHLTA. In many situations, it will in fact advance those purposes.

The MHLTA, like many statutes, serves more than one purpose. *Little Mountain Estates Tenants Ass'n v. Little Mountain Estates MHC, LLC*, 169 Wn.2d 265, 270, 236 P.3d 193 (2010). It protects tenants who require a stable, low-cost housing option, specifically including elderly and disabled individuals. *Id.* (citing RCW 59.22.010(2)). It also ensures that such housing exists in the first place by making it "economically feasible" to provide it—after all, if it were economically unfeasible to operate a mobile or manufactured home park where the MHLTA

applies, few people would be able to benefit from its protections. *Id.* Both

purposes could be severely undermined by making every specific provision of

every MHLTA lease enforceable in perpetuity without the formality—particularly

as applied to this case, acknowledged signatures—required for all other long-term

encumbrances on real property.

From the perspective of economic feasibility for landlords, the statute of

frauds provides stability by ensuring the enforceability of formalized, long-term

arrangements and provides flexibility by preserving the option of less formal,

shorter-term arrangements that can be adjusted to allow economic viability in the

face of changing conditions. Of course, if a landlord drafts a long-term lease and

then seeks to avoid honoring that lease because it violates the statute of frauds, the

MHLTA's "obligation of good faith" would be implicated.[2] RCW 59.20.020.

From the perspective of tenant protection, the statute of frauds' requirement

of an acknowledged signature is not an empty formality or a bureaucratic hoop to

jump through. It requires an authorized, uninterested third party to certify that the

person to be bound by a contract is (1) the person who actually signs it and (2)

---

[2]Tison's assertion that "[l]andlords typically do not leave room for any such acknowledgment on the standard rental agreement forms provided by the Manufactured Housing Communities of Washington" apparently relies on factual information outside the record. Suppl. Br. of Resp't at 8. Moreover, Tison's argument ignores the fact that acknowledgement may be either "written upon *or annexed to* the instrument acknowledged." RCW 64.08.050 (emphasis added). Finally, the preprinted lease form in this case did not include any terms over one year, and even if it did, an industry cannot override legislation by simply ignoring it in practice.

entering the contract "freely and voluntarily." RCW 64.08.050; *see also* RCW 42.44.010(4) (defining "acknowledgement" as "a statement by a person that the person has executed an instrument as the person's free and voluntary act"). A public official who is authorized to take acknowledged signatures has the duty to prevent forgery and to ensure that the person signing the contract is not acting under duress, coercion, mental incapacity, or some other incompetency. *See, e.g.*, RCW 42.44.080(2), .160; *Werner v. Werner*, 84 Wn.2d 360, 366-67 & n.1, 526 P.2d 370 (1974); *Jackson v. Tatebo*, 3 Wash. 456, 462-65, 28 P. 916 (1892). A private landlord with a direct pecuniary interest does not necessarily have such an incentive—it is much easier to obtain a favorable agreement with an identity thief or a person without the capacity to understand the contract's terms or implications. A particularly dishonest landlord might even add or modify terms to the lease *after* the tenant has signed it in an effort to enforce a different agreement than the one that the tenant thought she was entering into. *See Lohnes v. Meenk Lumber Co.*, 18 Wn.2d 251, 252-54, 138 P.2d 885 (1943). With RCW 59.04.010, the legislature determined that the risk of such unscrupulous behavior was acceptable for leases that did not exceed one year, but not beyond that.

In light of the fact that MHLTA-controlled lots are often occupied by "the low income, elderly, poor and infirmed," RCW 59.22.010(1)(a), the risk of an identity thief or unscrupulous landlord fraudulently locking a tenant into an

8

unfavorable lease is even greater in this context than it may be in others. This risk

is all the more unacceptable given that many MHLTA leases purport to bind the

tenant for decades to come. *See also* RCW 59.20.090(4)(a) (If a tenant must

terminate a rental agreement early due to a change in employment, and after "due

diligence and reasonable effort" the landlord cannot find a new tenant "at a fair

rental . . . the tenant shall remain liable for the rental specified in the rental

agreement until the lot is rented or the original term ends."). There is no evidence

that Tison's signature was forged or involuntary, but by shaping the law to fit her

specific circumstances, the majority places untold numbers of others at risk.[3]

## CONCLUSION

It is the legislature, not the court, that must strike the balance between the

benefits and burdens of applying the general tenancy statute of frauds to MHLTA

leases. The legislature struck that balance in favor of applying it. Because Tison's

lease does not comply with the statute of frauds, its specific provisions are

enforceable only for the presumptive one-year term applicable to all MHLTA

leases. I respectfully dissent.

---

[3] If applying the statute of frauds would be inequitable based on the facts presented, the proper approach is to apply the doctrine of part performance. *See Berg v. Ting*, 125 Wn.2d 544, 555-56, 559, 886 P.2d 564 (1995). Determining whether part performance applies would require a remand for additional fact-finding on whether any checks at the lower rent were accepted by Western Plaza LLC. *See* majority at 2 & n.4.

9

Yu, J.

Gordon McCloud, J.

Madsen, C.J.

Stephens, J.