# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |  |
|---|---|---|---|
| PUGET SOUND ENERGY, INC., | ) ) | No. 74464-0-I (consolidated with | |
| Appellant/ Cross Respondent, | ) ) ) | No. 74465-8-I) DIVISION ONE | |
| v. | ) ) | | |
| EAST BELLEVUE COMMUNITY COUNCIL, a community municipal corporation, | ) ) ) ) ) | | |
| Respondent/ Cross Appellant, | ) ) ) | UNPUBLISHED FILED: January 30, 2017 | |
| CITY OF BELLEVUE, a first class city organized pursuant to Washington law, | ) ) ) ) | | |
| Respondent. | ) ) ) ) | | |

2017 JAN 30 AM 9: 12
COURT OF APPEALS DIV I
STATE OF WASHINGTON

Cox, J. — The primary issue in this Land Use Petition Act (LUPA) appeal is whether Puget Sound Energy Inc. (PSE) meets its burden to show that the EBCC's disapproval within its area of the city of Bellevue's approval of a conditional use permit was improper. Another issue is whether the EBCC lacks authority to review the shoreline conditional use permit approved by the city of Bellevue.

We hold that RCW 35.14.040(3) does not give the EBCC authority to review shoreline conditional use permits approved by Bellevue. We affirm the trial court decision in this respect.

We also hold that PSE meets its burden under RCW 36.70C.130 to show that the EBCC's disapproval within its area of Bellevue's approval of PSE's conditional use permit was improper. Accordingly, we reverse the trial court's decision in this respect.

PSE seeks to improve electrical service reliability in Bellevue by looping an overhead transmission line in its Lake Hills substation with its Phantom Lake substation. PSE applied to Bellevue for a conditional use permit and a shoreline conditional use permit to construct a 2.89 mile, 115kV transmission line connecting these two substations. The proposed line is to run along N.E. 8th Street, 148th Avenue N.E. and S.E., S.E. 16th Street, and 156th Avenue S.E. This is partially within the EBCC's area.

The EBCC is a community council, established in 1969 when Bellevue annexed the EBCC area. The northern boundary of this area is N.E. 8th Street. This area also includes 148th Avenue S.E. The service areas for the two respective substations to be linked by the project are only partially within the EBCC's area.

By virtue of Bellevue's annexation of the EBCC area, RCW 35.14.040 provides the EBCC authority to affect whether land use ordinances approved by Bellevue become effective within the EBCC area. We discuss this statute and its application more fully later in this opinion.

2

In October 2014, Bellevue's Development Services Department recommended approval, subject to conditions, of PSE's application for a conditional use permit and a shoreline conditional use permit. This followed review of the applications under Washington's State Environmental Policy Act (SEPA) and the issuance of a Mitigated Determination of Non-Significance (MDNS). No appeal followed the MDNS, which stated that PSE's project "does not have a probable significant adverse impact upon the environment."

Thereafter, a hearing examiner conducted a public hearing and recommended that the Bellevue City Council approve PSE's application for both permits. The council approved both permits by its Ordinance No. 6226.

In June 2015, the EBCC passed its Resolution No. 550. It did so after conducting its own hearings. The resolution includes 16 numbered paragraphs of "findings and conclusions" in support of the resolution. In its resolution, the EBCC disapproved within its area Bellevue's Ordinance No. 6226.[1]

In July 2015, PSE commenced this LUPA action to challenge the EBCC's disapproval within its area of Bellevue's ordinance. The trial court concluded that PSE failed to meet the standards set forth in RCW 36.70C.130 to overturn the EBCC's resolution. The trial court also determined that the EBCC lacks jurisdiction to review Bellevue's approval of the shoreline conditional use permit.

PSE appeals, and the EBCC cross appeals.

---

[1] Administrative Record 3016-21; Clerk's Papers at 20-25.

**LUPA**

PSE argues that the trial court improperly upheld the EBCC's disapproval of the ordinance. We agree.

LUPA governs judicial review of land use decisions.[2] A "land use decision" is "a final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination, including those with authority to hear appeals . . . ."[3]

Under LUPA, we sit in the same position as the superior court and apply the standards provided in RCW 36.70C.130(1) to the administrative record.[4] These standards permit us to grant relief from a land use decision only if the party seeking relief establishes that one of the six standards under RCW 36.70C.130(1)(a) through (f) has been met.[5]

---

[2] Durland v. San Juan County, 182 Wn.2d 55, 63, 340 P.3d 191 (2014).

[3] RCW 36.70C.020(2).

[4] Dep't of Transp. v. City of Seattle, 192 Wn. App. 824, 836, 368 P.3d 251 (2016).

[5] Id.

Based on the parties' briefing, the only standards at issue in this case are subsections (c)-(e), which state:

> (c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;
> (d) The land use decision is a clearly erroneous application of the law to the facts;
> (e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision.[6]

*Decision Not Supported By Substantial Evidence*

PSE argues that substantial evidence does not support the EBCC's Resolution No. 550. We agree.

Under RCW 36.70C.130(1)(c), we must determine whether substantial evidence supports the land use decision "when viewed in light of the whole record before the court." Thus, we must determine "whether a fair-minded person would be persuaded by the evidence of the truth of the challenged findings."[7]

PSE argues that its project is consistent with Bellevue's comprehensive plan, which reflects Bellevue's effort to balance the city's needs with its appearance and character. PSE's opening brief focuses on paragraphs 3, 5, 9, 10, 11, 12, 13, 15, and 16 of the EBCC's findings and conclusions. The EBCC

---

[6] RCW 36.70C.130(1).

[7] Lauer v. Pierce County, 173 Wn.2d 242, 252-53, 267 P.3d 988 (2011).

5

responds by discussing paragraphs 3, 5, 6, 9, 10, 11, 12, 13, 14, and 16. Thus, there are only eight paragraphs—3, 5, 9, 10, 11, 12, 13, and 16—that have been briefed by both parties. Accordingly, we focus on these paragraphs to determine whether PSE has met its burden under LUPA to overturn the EBCC's resolution.

*Paragraph No. 3*

PSE argues that this paragraph is not supported by substantial evidence in the record. We agree.

This paragraph of the EBCC's findings and conclusions states:

> The Hearing Examiner's Findings of Fact, Conclusions of Law and Recommendation that the decision criteria for a Conditional Use Permit (CUP) set forth in Land Use Code (LUC) 20.30B.140 have been met is not supported by material and substantial evidence. Specifically, the conditional use is not consistent with the Comprehensive Plan. LUC 20.30B.140.A (Hearing Examiner Record at 149C, 180C).[8]

This paragraph states that no "material and substantial evidence" supports the hearing examiner's decision. The citation in this paragraph to LUC 20.30B.140(A) shows that the focus of this paragraph is on the hearing examiner's conclusion that the conditional use is consistent with the comprehensive plan as required by the land use code.[9]

Turning to the hearing examiner's decision, we conclude that it is supported by substantial evidence in the record. Specifically, it cites Bellevue's detailed staff report as well as attachment E to the report, which is a detailed

---

[8] Administrative Record at 3018.

[9] Administrative Record at 2179; Clerk's Papers at 61.

comprehensive plan policy analysis. The hearing examiner's conclusion is further supported by other specific evidence in the record.

Paragraph 3 of the EBCC's resolution fails to explain why this evidence, cited by the hearing examiner to support his conclusion that the permit is consistent with Bellevue's comprehensive plan, is not substantial. It is unpersuasive to state in conclusory fashion that no substantial evidence supports the hearing examiner's decision without explaining why this is so.

Likewise, the EBCC's briefing also fails to explain why substantial evidence does not support the hearing examiner's decision. Moreover, the citations to the record in the briefing do not show why the evidence cited by the hearing examiner is not substantial. In the absence of more, we must assume there is no sound basis to conclude that the hearing examiner's decision on this point is not supported by substantial evidence. Accordingly, we conclude there is no substantial evidence to support paragraph 3 of the EBCC's resolution.

*Paragraph No. 5*

PSE argues that this paragraph is not supported by substantial evidence in the record. We again agree.

This paragraph of the EBCC's findings and conclusions states:

The Hearing Examiner found, based on evidence in the record, that the City of Bellevue and its residents would benefit from a new transmission line, primarily from improved system reliability, and reduction in power outages and their duration, which can be achieved with the "looping" provided with the new line but failed to weigh these benefits against the environmental harm and lack of compliance with the comprehensive plan which would make the

residents of East Bellevue worse off than doing nothing. (Hearing Examiner Record at 56-57F).[10]

This paragraph faults the hearing examiner for failing to weigh the claimed benefits of PSE's project against the alleged "environmental harm and lack of compliance with the comprehensive plan which would make the residents of East Bellevue worse off than doing nothing."

First, this paragraph fails to specify what part of the Bellevue comprehensive plan is at issue when stating that PSE's project fails to comply with this plan. Unlike paragraph 3 of the resolution, there is not even a citation here to the land use code to guide us. Likewise, the EBCC's briefing also fails to fill this gap.

Second, there is nothing in this paragraph to explain on what basis the alleged failure to balance competing interests—environmental or otherwise—violates any law. Likewise, the EBCC's briefing does not address this point. Again, we must assume there is no sound basis for this paragraph. Accordingly, we conclude there is no substantial evidence to support paragraph 5 of the resolution.

*Paragraph No. 9*

PSE argues that this paragraph is not supported by substantial evidence in the record. We agree.

This paragraph of the EBCC's findings and conclusions states:

The Hearing Examiner's Findings of Fact, Conclusions of Law and Recommendation that Conditional Use Permit LUC 20.30B.140(B)

---

[10] Administrative Record at 3018.

has been met is not supported by material and substantial evidence. Throughout the documents, NW 8th, and especially 148th Ave are designated as Urban Boulevards, and part of the Enhanced Rights of Way; the routes are continually described as having no existing power lines. (Hearing Examiner Record 139-149C, 192F, 140C). This was not done by accident. 148th Ave was developed as an Urban Boulevard by a visionary City, and involved sacrifice for the greater good by private citizens. Homes were condemned and neighborhoods radically transformed to provide a national example of how major thoroughfares can be a pleasant park for commuters and residents alike. Obviously, a major element of the Urban Boulevard is a lack of visible utilities, such as distribution and transmission wires. The only visible utilities on NE 8th and 148th are light poles.[11]

This paragraph states that there is no "material and substantial evidence" to support the hearing examiner's decision that the project's design complies with LUC 20.30B.140(B). The citation in this paragraph to LUC 20.30B.140(B) shows that this provision is the focus of the paragraph. This provision requires that a project's design be "compatible with and respond[] to the existing or intended character, appearance, quality of development and physical characteristics of the subject property and immediate vicinity."[12]

Turning to the hearing examiner's decision, we conclude that it is supported by substantial evidence in the record. Specifically, the hearing examiner cites Bellevue's staff report, hearing testimony, the Conceptual Mitigation Plan, and other evidence to support his decision. Nothing in

---

[11] Administrative Record at 3019.

[12] LUC 20.30B.140(B), http://www.codepublishing.com/WA/Bellevue/ (last visited January 17, 2017).

paragraph 9 of the resolution addresses any of this evidence or explains why it is not substantial.

Rather than addressing the evidence on which the hearing examiner relied to support his conclusion, paragraph 9 of the EBCC's resolution states, in part, that "NE 8th, and *especially 148th Ave. are designated as urban boulevards.*"[13] In its briefing, the EBCC cites to two sections in the record in apparent support of this statement. The first citation is to a September 2012 memorandum from Bellevue to the EBCC in which the terms "Urban Boulevards" and "Urban Boulevards Initiative" appear. But a fair reading of the memorandum does not support the claim that 148th Avenue is an urban boulevard. More importantly, nothing in the memorandum suggests that such a designation would bar this project. Rather, the memorandum speaks of Bellevue's continued review of the project "to lessen [its] environmental and visual impacts."[14] A fair reading of the hearing examiner's December 2014 decision indicates that by the time of the public hearing, environmental and visual impact concerns had been properly addressed.

The second citation to the record is to one page of a December 2011 document addressing aspects of the project. This document states that neither NE 8th nor 148th Avenue then had overhead electrical distribution lines. But

---

[13] Administrative Record at 3019 (emphasis added).

[14] Id. at 2014.

nothing in this document suggests that having such lines in those locations would be inconsistent with Bellevue's comprehensive plan.

Further, Bellevue points out that its comprehensive plan "does not use the term 'urban boulevard' nor does it designate 148th Avenue as an 'urban boulevard.'"[17] Neither paragraph 9 of the resolution nor the EBCC's briefing does anything to refute this argument. Thus, an underlying factual premise of paragraph 9 is unsupported by substantial evidence.

Lastly, paragraph 9 goes on to state: "Obviously, a major element of the Urban Boulevard is a lack of visible utilities, such as distribution and transmission wires. The only visible utilities on NE 8th and 148th are light poles." As Bellevue correctly argues, nothing that has been cited to us shows that the comprehensive plan bars electric lines from 148th Avenue.[18]

For all of these reasons, we conclude that paragraph 9 is not supported by substantial evidence in the record.

*Paragraph No. 10*

PSE argues that this paragraph is not supported by substantial evidence. We agree.

This paragraph of the EBCC's findings and conclusions states:

The Hearing Examiner's Findings of Fact, Conclusions of Law and Recommendation that Conditional Use Permit LUC 20.30B.140(A) has been met is not supported by material and substantial evidence. This conditional use is inconsistent with the Comprehensive Plan provisions noted below which repeatedly refer

---

[17] Brief of Respondent City of Bellevue at 2 n.2.

[18] Id.

11

to Bellevue's Commitment to a City in a Park, and developing the Urban Boulevard and Enhanced Right of Way:

    a.  UT-45 page 209 "avoid . . . locating overhead lines in greenbelt and open spaces . . . [.]"

    b.  UT-53 page 210 "require all utility . . . facilities to be aesthetically compatible . . . [.]"

    c.  UT-19 page 212 refers to city in a park, preserving trees

    d.  UT-42 page 212 Design boulevards to reinforce the image of Bellevue as a "City in a Park"

    e.  S-WI-44 Utilities page 214 serve need enhancing the visual quality of the community.[19]

This paragraph states that "material and substantial evidence" does not support the hearing examiner's decision that the conditional use permit is consistent with the comprehensive plan. The citation in this paragraph to LUC 20.30B.140(A) shows that this land use code provision is the focus of this paragraph.

We already discussed in this opinion that substantial evidence exists to support the conclusion that the conditional use permit is consistent with the comprehensive plan. Nothing, either in this paragraph or in the EBCC briefing, changes our conclusion on this point.

*Paragraph No. 11*

PSE argues that this paragraph is not supported by substantial evidence. We agree.

This paragraph of the EBCC's findings and conclusions states:

The evidence in the record does not support the NE 8th St, and 148th Avenue route. (Hearing Examiner Record at 139-149C). "Understanding Bellevue's Commitment to Street Aesthetics" which cites the Formal Enhanced Right of Way & Urban Boulevards

---

[19] Administrative Record at 3019; Clerk's Paper at 22 (alterations in original).

12

Program whose mission is to "Enhance the visual and functional quality of city streets and gateways . . . [.] It includes a 4-person Steering Committee of City Directors and Assistant Directors and [an] 8-person Program Team of city staff . . . [.]" (Hearing Examiner Record at 140C). This fundamental criteria was not regarded consistent with other rules and guidelines. As pointed out in the [Bellevue resident's] letter, more than 50,000 people enjoy this park daily, and the whole project will adversely affect this enjoyment; from construction delays to long-term visual pollution.[20]

This paragraph states that the evidence in the record does not support "the NE 8th St and 148th Avenue route" without specifying the relevant criteria in LUC 20.30B.140. From the EBCC briefing, however, it appears that LUC 20.30B.140(D) is the focus of this paragraph of its resolution.[21] Accordingly, we also focus on this provision of Bellevue's land use code.

Turning again to the hearing examiner's decision, we note that he concluded that the "conditional use will not be materially detrimental to uses or property in the immediate vicinity of the subject property."[22] This conclusion is based on Bellevue's staff report, the final MDNS—which was not the subject of appeal—and other evidence in the record. Again, the question is whether the EBCC correctly determined that this evidence was not substantial.

LUC 20.30B.140(D) states that Bellevue may approve a conditional use permit if "[t]he conditional use will not be materially detrimental to uses or

---

[20] Administrative Record at 3020; Clerk's Papers at 24 (some alterations in original).

[21] See Brief of Respondent/Cross-Appellant East Bellevue Community Council at 23.

[22] Administrative Record at 2179.

property in the immediate vicinity of the subject property." Bellevue's land use code does not define "materially detrimental."[23] But "material" can be defined as "[b]eing both relevant and consequential; crucial."[24] And "detrimental" means "[c]ausing damage or harm; injurious."[25] The EBCC appears to imply, without expressly stating, that the project will be materially detrimental to property in the vicinity of the project.

The EBCC relies on a 2012 Bellevue resident letter to support this argument. The letter states: "50,000 . . . motorists . . . will see the impacts of this proposal every day."

The record shows that construction for this project will take between four to six months to complete. Bellevue's staff report states that the project's traffic impacts "will be temporary and occurring only during the construction phase." Additionally, the construction will not occur in the same location for four to six months because the transmission line covers 2.89 miles.

This evidence is substantial in demonstrating that there will be no materially detrimental impacts "to uses or property in the immediate vicinity of the

---

[23] See Chapter 20.50 LUC, http://www.codepublishing.com/WA/Bellevue (last visited January 17, 2017).

[24] THE AMERICAN HERITAGE DICTIONARY (5th ed. 2016), https://ahdictionary.com/word/search.html?q=material (last visited January 13, 2017).

[25] THE AMERICAN HERITAGE DICTIONARY (5th ed. 2016), https://ahdictionary.com/word/search.html?q=detrimental (last visited January 13, 2017).

subject property" from the PSE project.[26] That a 2012 letter suggests otherwise does not establish a lack of substantial evidence to support the hearing examiner's conclusion. Rather, it merely is evidence that might support a different conclusion.

We conclude there is no substantial evidence to support paragraph 11 of the EBCC's resolution.

*Paragraph No. 12*

PSE argues that this paragraph is not supported by substantial evidence. We agree.

This paragraph of the EBCC's findings and conclusions states:

The Hearing Examiner's Findings of Fact, Conclusions of Law and Recommendation that Conditional Use Permit LUC 20.30B.140(D) has been met is not supported by material and substantial evidence. The impact of traffic on 148th Avenue NE including costs of adverse impacts to commerce, pollution, and commute time were not considered. (Hearing Examiner Report at p. 86).[27]

As previously stated, LUC 20.30B.140(D) states that Bellevue may approve a conditional use permit if "[t]he conditional use will not be materially detrimental to uses or property in the immediate vicinity of the subject property." Substantial evidence does not support this paragraph of the EBCC's resolution.

The EBCC cites the traffic impact section of Bellevue's staff report as support for this conclusion. But the hearing examiner cited this report, along with other evidence in the record, such as the MDNS, to support his conclusion.

---

[26] LUC 20.30B.140(D), http://www.codepublishing.com/WA/Bellevue/ (last visited January 17, 2017).

[27] Administrative Record at 3020; Clerk's Papers at 24.

This paragraph of the EBCC's resolution, and their brief, fail to explain why this evidence is not substantial to support the hearing examiner's conclusion. Without this explanation, we must again assume there is no sound basis for the EBCC's conclusion. Thus, we conclude that substantial evidence does not support paragraph 12 of the EBCC's resolution.

*Paragraph No. 13*

PSE argues that this paragraph is not supported by substantial evidence. We agree.

This paragraph of the EBCC's findings and conclusions states:

The Hearing Examiner's Findings of Fact, Conclusions of Law and Recommendation that Additional Criteria for Electrical Utility Facilities LUC 20.20.255[(E)(3)] has been met is not supported by material and substantial evidence. The record indicates that there have been few outages due to substation or transmission lines. There were 5 power outages in 10 years; 4 by trees, fixed within a day caused by transmission line failure. (Hearing Examiner Record 26F, 19C). Outages are "mostly due to failures of overhead conductors and tree related events." (Hearing Examiner Record 27F). Any claims of improved reliability are statistically insignificant. (Hearing Examiner Record 26F, 19C, 27F, Hearing Examiner Report at p. 11 para 3, stating that the two substations are currently underutilized).[28]

LUC 20.20.255(E)(3) states that an applicant "shall demonstrate that an operational need exists that requires the location or expansion at the proposed site." Bellevue's land use code does not define "operational need."[29]

---

[28] Administrative Record at 3020; Clerk's Papers at 24.

[29] See Chapter 20.50 LUC, http://www.codepublishing.com/WA/Bellevue/ (last visited January 17, 2017).

As support for his conclusion, the hearing examiner cited Bellevue's staff report, testimony and a letter from PSE's engineer, and a reliability study, which recommended an additional transmission line to the existing substations.

The EBCC cites a list of EBCC council member questions and comments, along with pages from PSE's 2013 System Reliability Review regarding outages, to support its conclusion. The EBCC also cites the hearing examiner's finding that the Lake Hills and Phantom Lake substations are "under-utilized." But this paragraph of the EBCC's resolution, and their brief, fail to explain why the evidence cited by the hearing examiner is not substantial to support his conclusion. Again, without this explanation, we must assume there is no sound basis for the EBCC's conclusion. Accordingly, substantial evidence does not support paragraph 13 of the EBCC's resolution.

### Paragraph No. 16

PSE argues that this paragraph is not supported by substantial evidence. We agree.

This paragraph of the EBCC's findings and conclusions states:

> The project fails to achieve the desired benefit of redundancy because the "loop" cannot be completed as originally proposed. (Hearing Examiner Report at pp. iv and 36). PSE does not intend to construct the segment of the project along SE 16th until an unspecified date in the future. (Hearing Examiner Report at p. 54).[30]

Although not explicitly mentioned in this paragraph, it apparently refers to LUC 20.20.255(E)(4). This provision requires that the applicant "demonstrate

---

[30] Administrative Record at 3020-21; Clerk's Papers at 24.

that the proposed electrical utility facility improves reliability to the customers served and reliability of the system as a whole . . . ."[31]

The record shows that Bellevue proposed that PSE "defer[]" construction of the S.E. 16th portion of the line due to a different city project affecting that area. In the meantime, PSE will install three switches on certain poles so the power to the Phantom Lake substation "can be switched from north or from the south."

PSE determined that the reliability impact of these switches "won't be as great as the completed project." But "further reliability improvement for [the] Phantom Lake substation will occur in the future when a second transmission line segment is added along Southeast 16th to provide a loop feed to the Phantom Lake substation."[32]

Ultimately, the hearing examiner recommended that PSE "not be allowed to run a separate new transmission line down the south side of SE 16th Street." The hearing examiner also concluded that the project satisfied LUC 20.20.255(E)(4). As support for his conclusion, the hearing examiner cited testimony and a letter from PSE's engineer and a reliability study, which recommended an additional transmission line to the existing substations.

Although the current project does not fully achieve the improved reliability result that PSE originally anticipated, that does not mean that the project fails to

---

[31] LUC 20.20.255(E)(4), http://www.codepublishing.com/WA/Bellevue/ (last visited January 17, 2017).

[32] Record of Proceeding (November 20, 2014) at 37.

"improve[] reliability to the customers served and reliability of the system as a whole."[33] The record shows that the project still improves reliability, but not as much as it would have as originally proposed. The EBCC acknowledges this fact in its brief. Thus, we conclude there is no substantial evidence to support paragraph 16 of the EBCC's resolution.

### Decision Outside the EBCC's Authority

PSE argues that the EBCC exceeded its authority by passing Resolution 500. We disagree.

Under RCW 36.70C.130(1)(e), we may grant PSE relief if it establishes that the EBCC's decision "is outside [EBCC's] authority or jurisdiction." This is a question of law that we review de novo.[34]

Under RCW 35.14.040(3), the EBCC has the authority to approve or disapprove conditional use permits approved by Bellevue to the extent of property within the EBCC's area.[35] But this statute also provides that the community council's disapproval "shall not affect the application of any ordinance or resolution affecting areas outside the community municipal corporation."[36]

---

[33] LUC 20.20.255(E)(4), http://www.codepublishing.com/WA/Bellevue/ (last visited January 17, 2017).

[34] See Phoenix Dev., Inc. v. City of Woodinville, 171 Wn.2d 820, 828, 256 P.3d 1150 (2011).

[35] See RCW 35.14.040.

[36] Id.

19

Here, the EBCC exercised its authority under RCW 35.14.040(3) to disapprove Bellevue's Ordinance 6226. The trial court properly concluded that the EBCC's decision was not outside its authority or jurisdiction to the extent of its area. Thus, the trial court concluded that PSE failed to satisfy its burden under RCW 36.70C.130(1)(e).

PSE makes several arguments in an attempt to show that the EBCC exceeded its authority. We do not address all of them because it is unnecessary to do so in view of our disposition of this appeal.

This is not the first dispute between these litigants over the application of RCW 35.14.040 to land use issues. In <u>City of Bellevue v. East Bellevue Community Council</u>, this statute was at issue in connection with the EBCC's disapproval of certain Bellevue actions.[37] In that case, the supreme court stated:

> The obvious purpose of the statute is to place final decision-making power in the community council where land use regulations affecting property *within its jurisdiction* are concerned. RCW 35.14.040 provides a community council with authority to independently determine whether to approve or disapprove land use legislation affecting territory *within its jurisdiction*, in keeping with the Legislature's intent to allow local level decision making. Therefore, where there is room for exercise of discretion as to whether particular land use regulations should be applied to property *within the municipal corporation*, the community council must be allowed to exercise that discretion to carry out the legislative intent underlying RCW 35.14.040.[38]

---

[37] 138 Wn.2d 937, 939, 983 P.2d 602 (1999).

[38] <u>Id.</u> at 945 (emphasis added).

20

Here, the EBCC exercised its authority to disapprove within its jurisdiction the conditional use permit authorized by Bellevue. Thus, the primary question is whether there was room for the EBCC to exercise its discretion in doing so.

PSE argues, for the first time in its reply brief, that the EBCC "asserts the right to unilaterally affect the reliability of power to Bellevue homeowners outside its territory." Because PSE makes this argument for the first time in its reply brief, it is too late for us to consider.[39] We decline to do so.

However, Bellevue makes a similar argument as a respondent. It argues that the EBCC's decision, if left standing, would have an extraterritorial affect because it will affect citizens outside the EBCC's area.

As we discussed earlier in this opinion, the area over which EBCC has jurisdiction is bounded on the north by NE 8th Street. The area includes 148th Avenue S.E., and the service area for the two substations to be linked by the project are only partially within the EBCC's area.

RCW 35.14.040 provides that the EBCC's disapproval "shall not affect the application of any ordinance or resolution affecting areas outside the community municipal corporation." Because we hold that PSE has met its burden to show that the EBCC's resolution is improper, we need not also decide whether the resolution violates the geographical limitations of this statute. Accordingly, that is an issue left for decision another day.

---

[39] See Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992); RAP 10.3(c).

*Clearly Erroneous Application of the Law to the Facts*

PSE argues that the EBCC erroneously applied the law to the facts by failing to accord substantial weight to the hearing examiner's recommendation. In making this argument, PSE focuses on paragraphs 4, 6, 13, and 14 of the EBCC's findings and conclusions. Because, for the reasons previously stated in this opinion, we focus on other paragraphs of the resolution, we need not address these arguments.

*Erroneous Interpretation of the Law*

PSE argues in its opening brief that the EBCC erroneously interpreted the law. PSE fails to state which law the EBCC erroneously interpreted. Accordingly, we need not address this argument.[40]

The parties also argue other issues regarding the conditional use permit in their briefing. Because of our disposition of this case, we need not address those other arguments.

## JURISDICTION TO REVIEW
## SHORELINE CONDITIONAL USE PERMITS

On cross appeal, the EBCC argues that the trial court improperly concluded that the EBCC lacks jurisdiction to approve or disapprove the shoreline conditional use permit granted by Bellevue in this case. We hold that the plain words of RCW 35.14.040(3) do not give the EBCC jurisdiction to approve or disapprove shoreline conditional use permits granted by Bellevue.

---

[40] See Darkenwald v. Emp't Sec. Dep't, 183 Wn.2d 237, 246, 350 P.3d 647 (2015); RAP 10.3(a)(6).

We interpret statutes to determine and apply the legislature's intent.[41] The legislature's intent is solely derived "from the statute's plain language, considering the text of the provision at issue . . . ."[42]

"Where a statute specifically designates the things or classes of things upon which it operates, an inference arises in law that all things or classes of things omitted from it were intentionally omitted by the legislature under the maxim expressio unius est exclusio alterius—specific inclusions exclude implication."[43]

We review de novo questions of statutory interpretation.[44]

RCW 35.14.040(3) is the sole basis on which the EBCC bases its claim of authority to review shoreline conditional use permits approved by Bellevue. That statute states when a city council's adoption of ordinances applying to land and certain other matters becomes effective within the community municipal corporation's area. It provides:

> The **adoption**, approval, enactment, amendment, granting or authorization by the city council . . . of any **ordinance** or resolution applying to land, . . . within any community council corporation shall become effective within such community municipal corporation . . . on approval by the community council, . . . with respect to the following:
>
> . . .
>
> (3) **Conditional use permit**, special exception or variance; . . . .[45]

---

[41] Segura v. Cabrera, 184 Wn.2d 587, 591, 362 P.3d 1278 (2015).

[42] Id.

[43] Wash. Nat. Gas Co. v. Pub. Util. Dist. No. 1 of Snohomish County, 77 Wn.2d 94, 98, 459 P.2d 633 (1969).

[44] Western Plaza, LLC v. Tison, 184 Wn.2d 702, 707, 364 P.3d 76 (2015).

[45] (Emphasis added.)

23

Here, Bellevue Ordinance No. 6226 adopted the hearing examiner's recommendation to approve, with conditions, PSE's application for a conditional use permit and shoreline conditional use permit. The issue is whether the EBCC has authority under the above statute to bar the effectiveness within its area of Bellevue's Ordinance No. 6226 as it applies to the shoreline conditional use permit. Specifically, the question is whether "shoreline conditional use permits" constitute "conditional use permit[s]" under this statute.

The plain words of this provision of the statute specify three types of land use matters that the EBCC has the authority to either approve or disapprove within its area. These matters are similar to each other in the sense that they are terms generally applicable to land use matters. For example, one respected treatise describes "conditional use" and "special exception" as describing the same thing.[46] Similarly, a "variance" is defined as "[a] license or official authorization to depart from a zoning law."[47]

Shoreline conditional use permits are not expressly included in the statutory text. Yet the EBCC argues that the legislature impliedly included such permits as a subset of "conditional use permits." We are not persuaded this is so.

---

[46] 17 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 4.22 at 252 (2d ed. 2004).

[47] BLACK'S LAW DICTIONARY 1787 (10th ed. 2014).

As PSE correctly argues, shoreline conditional use permits are governed by the provisions of chapter 90.58 RCW. That statutory framework imposes rigorous requirements that reflect, in our view, a primacy of state interests over local interests with respect to Washington's shorelines.

On the other hand, conditional use permits are governed by the provisions of chapter 35.63 RCW. This separate chapter, enacted well before chapter 90.58 RCW, does not reflect, in our view, the primacy of state interests over local interests with respect to land use matters related to shorelines. Rather, the chapter focuses on local interests.

In short, this latter statutory framework is sufficiently distinct in focus from the former to undercut the argument that "shoreline conditional use permits" are merely a subset of "conditional use permits." While these statutory provisions operate in tandem, they are sufficiently distinct in purpose for us to infer that the legislature did not intend that RCW 35.14.040(3) include both types of use permits.

We note that the legislature has had opportunities to amend the provisions of RCW 35.14.040(3) to include the express term "shoreline conditional use permit" within the scope of decisions that a community municipal corporation may approve or disapprove within its area. But the legislature has not done so.

Of course, there could be many reasons why the legislature has chosen not to amend this statute to add expressly what the EBCC argues is implied. But in light of the distinct statutory underpinnings of these two types of use permits that we just discussed, we decline to add words to the statute that the legislature

25

did not. Whether the statute should be amended to expressly include shoreline conditional use permits is a question more properly left to the legislature to decide.

Accordingly, based on the rules of statutory construction, we conclude that shoreline conditional use permits are not within the scope of RCW 35.14.040(3). Thus, the EBCC is without authority to either approve or disapprove within its area shoreline conditional use permits granted by Bellevue.

## ATTORNEY FEES

The EBCC requests reasonable attorney fees on appeal. Because there is no authority for an award in its favor, we decline to award such fees.

The EBCC requests attorney fees under RCW 4.84.370, which states in relevant part:

> (1) Notwithstanding any other provisions of this chapter, reasonable attorneys' fees and costs shall be awarded to the *prevailing party or substantially prevailing party* on appeal before the court of appeals . . . of a decision by a *county, city, or town* to issue, condition, or deny a development permit involving a . . . conditional use . . . . The court shall award and determine the amount of reasonable attorneys' fees and costs under this section if:
>     (a) The prevailing party on appeal was the prevailing or substantially prevailing party before the *county, city, or town* . . . ; and
>     (b) The prevailing party on appeal was the *prevailing party or substantially prevailing party* in all prior judicial proceedings.[48]

---

[48] (Emphasis added.)

First, the EBCC is neither the prevailing nor the substantially prevailing party on appeal. That is because we reverse the trial court's LUPA petition decision on the basis previously discussed in this opinion.

Second, and more importantly, the plain words of this statute on which the EBCC relies limit an award of fees to one who prevails or substantially prevails on appeal of a decision by a *"county, city, or town."*[49] The EBCC is none of these three entities. Rather, it is a "community municipal corporation," established under chapter 35.14 RCW. Thus, even if it had been a prevailing or substantially prevailing party on appeal, it would still not be entitled to an award of fees on appeal.

The EBCC argues that it is a "local jurisdiction" under RCW 36.70C.020(3), the definitional section of LUPA. But this makes no difference to the proper analysis of whether it is entitled to an award of fees under RCW 4.84.370, the fee statute at issue.

RCW 36.70C.020(3) provides:

Unless the context clearly requires otherwise, *the definitions in this section apply throughout this chapter.*

. . .

 (3) "Local jurisdiction" means a county, city, or incorporated town.[50]

The plain words of this statute make clear that this definition is limited to LUPA. There is nothing in this text to show that it also applies to RCW 4.84.370,

---

[49] Durland, 182 Wn.2d at 77 (emphasis added).

[50] (Emphasis added.)

27

a separate statute. In the absence of such a showing, there is simply no authority to award EBCC attorney fees under RCW 4.84.370.

We affirm the orders on jurisdictional issues and on the motion to quash. We reverse the order dismissing the LUPA petition. We deny the EBCC's request for an award of attorney fees on appeal.

Cox, J.

WE CONCUR:

Trickey, ACJ

Schindler, J

28